Argued and submitted January 21, reversed and
remanded for resentencing March 10, 1980

STATE OF OREGON,
*Respondent,*
*v.*
JEFF C. PERKINS,
*Appellant.*

(No. J78-2357, CA 15188)

607 P2d 1202

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

[91]

THORNTON, J.

**THORNTON, J.**

Defendant appeals entry of a judgment of conviction and sentencing on two counts of robbery in the first degree on the ground that, under principles set forth in *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979), the crime in question was one offense for sentencing purposes.

Resolution of the question requires application of *Cloutier* principles to a situation expressly left open in that opinion, namely, where the crime is perpetrated against more than one person. 286 Or at 598.

The essential facts are not in dispute:

Defendant and an accomplice entered a restaurant during the early morning hours of September 29, 1978, before it opened for business. At that time, only a cook and a waitress were present. The accomplice had entered via the back door and surprised the cook by leaping out from behind a doorway and threatening her with a knife. She screamed several times and he again brandished the knife and told her to be quiet. When a waitress, who was in the dining room, heard the cook scream, she hesitated a moment, then went toward the back to investigate. At that point, defendant, wielding a club, came out from the back and ordered her to remain silent and go into the kitchen area. Defendant stood guard over the two women, swinging the club, while the accomplice emptied the cash from a file cabinet in the office. The entire episode lasted from three to five minutes, then both men ran out the back.

Defendant was charged with, and verdicts of guilty were returned on, one count of theft, two counts of robbery in the second degree (ORS 164.405(1)(b)): robbery with the aid of another present), and two counts of robbery in the first degree. The trial court "merged" the theft and robbery in the second degree

charges and, over defendant's objection, entered judgments of conviction and sentence on the robbery in the first degree charges.

ORS 131.505(3) provides:

> "When the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of [sic] two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims."

In *State v. Dillman,* 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979), defendant, in the course of holding up a bank, pointed his gun at four separate tellers and ordered each to deliver the money in his respective till. We concluded that each teller was a victim of robbery and there were four separate offenses. 34 Or App at 941-42.[1] *Dillman* then stated:

> "Because there were four separate offenses, there was no error in sentencing defendant on each conviction. [Citation omitted.]" 34 Or App at 942.

Since then, our Supreme Court has decided *State v. Cloutier, supra,* in which it rejected the proposition that because there are multiple victims (within the meaning of ORS 131.505(3)) for the purpose of determining the number of offenses for which a defendant may be charged, it necessarily follows that defendant may be convicted and sentenced for each offense. 286 Or at 589-90.[2] While apparently agreeing that the

---

[1] *Dillman* relied principally on *State v. Gilbert,* 281 Or 101, 474 P2d 313 (1978), where the court construed ORS 131.505(3) to permit prosecution on six separate indictments for theft because each person whose property was wrongfully withheld was a "victim" for purposes of determining the number of offenses. The court, however, specifically left open the question of whether these multiple prosecutions could result in separate sentences for each offense. 281 Or at 110.

[2]

> " * * * ORS 131.505 obviously does not address that problem [whether a defendant prosecuted for multiple offenses may be sentenced for every offense of which he is found guilty], being limited by

central inquiry is who are victims of the crime, 286 Or at 598-99, note 19, the court said that such a determination must take into account other expressions of legislative intent, in particular, that the sentence be proportionate to the offense (ORS 161.025(1)(g)) and in line with defendant's "criminal objective." 286 Or at 595.[3]

In *Dillman,* we noted that the 1971 changes in the criminal code indicated "that the gravamen of the robbery offense is the threat of harm to persons." 34 Or App at 941. Statutory evidence of this shift in emphasis is found in the fact that it is no longer necessary that a completed theft occur for conduct to be chargeable as robbery and the degree of the crime no longer depends on the value of the property taken, but on the presence of aggravating factors which increase the apprehension of harm.

The state contends that because a threat of force was made against each of the two restaurant employes in this case, there were two robberies. While the revision undoubtedly made a wider spectrum of conduct chargeable as robbery, we do not believe the change manifests a legislative intent that a defendant may be sentenced for as many crimes as there are persons present.[4] Such a result loses sight of the fact that the

its own terms to the provisions governing single or separate prosecutions. Nevertheless, the Court of Appeals believed that our reading of ORS 131.505 in *Gilbert [State v. Gilbert, supra* at n 1] necessarily implied the propriety of separate sentences for 'separate offenses.' * * * But we do not agree that this follows from the mere definition. * * *" 286 Or at 589.

[3] The propriety of a sentence in a particular case is governed by legislative intent. *State v. Welch,* 264 Or 388, 390, 505 P2d 910 (1973). This intent must be gleaned from express statutory provisions, legislative history and state and federal double jeopardy jurisprudence. *State v. Cloutier,* 286 Or 579, 585, 596 P2d 1278 (1979).

[4]

" * * * The range or class of potential penalties prescribed for each statutory offense represents a legislative judgment of the gravity of that offense alone, and there are often provisions for aggravation or for

ultimate criminal objective here was theft from the restaurant safe. By the same reasoning, if there had been 30 patrons present in addition to the two employes, a defendant could be convicted and sentenced for 32 robberies.[5]

The legislative intent with respect to sentencing in this and similar cases is not clear. Faced with a similar ambiguity in *State v. Welch,* 264 Or 388, 505 P2d 910 (1973) (simultaneous deposit of two forged checks), our Supreme Court adopted language from *Bell v. United States,* 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955) (simultaneous transportation of two women across state lines in violation of the Mann Act):

> " 'When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. * * *' 349 US at 83-84." 264 Or at 393.

We hold, therefore, that only one sentence may be imposed in this case. In determining the severity of the sentence to be imposed, it is appropriate for the sentencing court to consider the fact that more than one person was threatened and the degree of such threats.

---

habitual offenders. [Statutory citations omitted.] But only occasional provisions directly address the penalty to be imposed for multiple statutory violations that share common elements of time, place, act or intent. * * *" *State v. Cloutier, supra,* n 3, 286 Or at 590.

[5] The facts of this case fall within ORS 164.395(1)(a) (use of physical force in preventing resistance to the taking of property) and do not involve, as the state contends, a question of whether the two employes were "owners" within the meaning of ORS 164.395(1)(b) and ORS 164.005(4). The fact situation where the person threatened is the person compelled to hand over the property (*i.e. Dillman*) is not before us.

*Compare State v. Garcia,* 288 Or 413, 427-29, 605 P2d 670 (1980) (defendant who committed three separately defined acts of sodomy may be sentenced for only one offense but sentence may take cognizance of multiple acts).[6]

Reversed and remanded for resentencing.

**SCHWAB, C. J.,** concurring.

I concur in the majority opinion. I would note, however, that I do not think that *State v. Dillman,* 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979), can be reconciled with the principles enunciated in *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979), and *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980).

---

[6] In *Garcia,* the court stated in dictum:

" * * * [T]he offense of robbery in the first degree, ORS 164.415, can be committed in three different ways: by being armed with a deadly weapon, by using or attempting to use a dangerous weapon, and by causing or attempting to cause serious physical injury to any person. If a robber, armed with a loaded pistol, first brandished his pistol, then moments later, pulled a knife and attempted to stab his victim, then took the victim's wallet and fled, would he be subject to three separate 20-year sentences for robbery? The legislature never addressed this question, so the courts are left with a difficult policy choice. Certainly the victim is exposed to additional fear, danger, and humiliation by the successive assaults. [Footnote omitted.] Yet the length of a *single* sentence for first degree robbery should reflect the aggravated circumstances of the crime." (Emphasis in original.) 288 Or at 427-28.