**UNITED STATES, Appellee,**

v.

**Andrew A. SZENTMIKLOSI, Specialist,
U.S. Army, Appellant.**

No. 00–0271.
Crim.App. No. 9701049.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 8, 2000.

Decided Sept. 28, 2001.

488

BAKER, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and SULLIVAN, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain Stephanie L. Haines* (argued); *Lieutenant Colonel David A. Mayfield* and *Major Mary M. McCord* (on brief); *Major Jonathan F. Potter.*

For Appellee: *Major Anthony P. Nicastro* (argued); *Colonel David L. Hayden* and *Lieutenant Colonel Edith M. Rob* (on brief); *Captain Kelly D. Haywood.*

Judge BAKER delivered the opinion of the Court.

In July 1997, a military judge found appellant guilty, in accordance with his pleas, of conspiracy to commit robbery, unauthorized absence, and robbery (two specifications), in violation of Articles 81, 86, and 122, Uniform Code of Military Justice, 10 USC §§ 881, 886, and 922, respectively.[1] Thereafter, a general court-martial composed of officer members sentenced appellant to a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction to the lowest enlisted grade (E–1). The convening authority approved the sentence as adjudged. The Court of Criminal Appeals affirmed the findings and the sentence. 52 MJ 639 (2000). We granted review on the following issue:

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRONEOUSLY FOUND THAT ROBBERY IS PREEMI-NENTLY A CRIME OF VIOLENCE AGAINST A PERSON, AND IN CRIMES OF VIOLENCE THE PERMISSIBLE UNIT OF PROSECUTION IS THE NUMBER OF VICTIMS (PERSONS) ASSAULTED, RATHER THAN THE NUMBER OF LARCENIES COMMITTED.

The ultimate question presented by this appeal is whether the taking of property belonging to a single entity by force or violence from the possession of two individuals exercising joint custody or control over that property constitutes one robbery or two. Based on the reasoning set forth below, we conclude that under such circumstances, only one conviction for robbery may be sustained. Therefore, we reverse in part and remand.

*Background*

Prior to trial, appellant and the Government entered into a stipulation of fact detailing appellant's involvement in the crimes to which he pled guilty. Since this stipulation was ultimately admitted, the facts are not in dispute.

Appellant, a military policeman, conspired with three others to rob the Post Exchange (PX) money courier. Appellant knew the civilian courier would be escorted by a military policeman since he had previously performed those same duties himself. On the morning of March 15, 1997, appellant and an accomplice positioned themselves near the rear of the PX to await the arrival of the military police escort and the courier, who would be returning from the bank with a bag of funds required for the PX to begin its business day. The two had donned ski masks and gloves. Appellant was armed with a loaded pistol, and the accomplice had armed himself with a loaded shotgun. As the courier and the escort arrived and exited their vehicle, appellant rushed toward the

1. The robbery specifications at issue in this appeal state that:

Specification 1: [appellant] ... did, at Fort Riley, Kansas, on or about 15 March 1997, by means of force and violence and putting him in fear with a firearm steal from the person of Antonio M. Florido, against his will, U.S. currency of a value of $36,724.88, the property of the Army Air Force Exchange Service.

Specification 2: [appellant] ... did, at Fort Riley, Kansas, on or about 15 March 1997, by means of force and violence and putting him in fear with a firearm steal from the presence of Sergeant Dennis J. Sleva, against his will, U.S. currency of a value of $36,724.88, the property of the Army Air Force Exchange Service.

courier, who was carrying the bag of money, and his accomplice rushed toward the military policeman. Pointing the pistol at the courier, appellant motioned him to put the bag of money down. After the courier complied, appellant ordered him to get down, sprayed the courier's face with mace, and grabbed the bag containing $36,724.[2]

While appellant was subduing the courier, his accomplice confronted the military policeman and ordered him to the ground. As the military policeman was kneeling to the ground in compliance with the demand, the accomplice struck him in the back of the head with the shotgun, causing a serious wound to the military policeman's head. The military policeman fell to the ground, incurring another deep wound above the right eye. The accomplice then took the military policeman's pistol, handcuffs, and radio.[3] The two then fled the scene in the military police vehicle. A subsequent investigation ultimately implicated appellant and his confederate, whereupon appellant confessed his involvement.

*Discussion*

The issue of robbery of multiple victims in possession of the same property belonging to a single entity is one of first impression for this Court. Both state and federal courts have reached the issue with divergent results. A number of states have concluded that a forcible taking under these circumstances results in multiple robberies. *Sullivan v. Commonwealth*, 16 Va.App. 844, 433 S.E.2d 508 (1993); *Commonwealth v. Rozplochi*, 385 Pa.Super. 357, 561 A.2d 25 (1989); *Davis v. United States*, 498 A.2d 242 (D.C.App.1985); *Commonwealth v. Levia*, 385 Mass. 345, 431 N.E.2d 928 (1982); *State v. Perkins*, 45 Or.App. 91, 607 P.2d 1202 (1980). Other states have held that such circumstances result in only one robbery.

*State v. Collins*, 174 W.Va. 767, 329 S.E.2d 839 (1984); *State v. Faatea*, 65 Haw. 156, 648 P.2d 197 (1982); *Williams v. State*, 271 Ind. 656, 395 N.E.2d 239 (1979); *State v. Potter*, 285 N.C. 238, 204 S.E.2d 649 (1974); *People v. Nicks*, 23 Ill.App.3d 435, 319 N.E.2d 531 (1974), *rev'd on other grounds*, 62 Ill.2d 350, 342 N.E.2d 360 (1976).

With some exceptions, states adopting the multiple-robbery result have generally relied on the theory that robbery statutes focus on the assault aspect of the crime. As a result, there are as many robberies as there are victims assaulted. *Perkins*, 607 P.2d at 1203;[4] *Levia*, 431 N.E.2d at 931 ("it is assumed that the robbery is of the persons assaulted"); *Davis*, 498 A.2d at 246 ("robbery [under D.C.Code ...] is basically a crime against the person"). On the other hand, states adopting the one-robbery result have chosen to rely on the fact that the property forcibly taken belonged to a single business entity with clerks, cashiers, or other agents exercising constructive possession over the property on behalf of the entity.

In *Allen v. State*, 428 N.E.2d 1237 (Ind. 1981), two armed men threatened employees of a credit union and took money from two tellers. The court held that only one robbery had occurred when all that was taken was titled in one entity. Similarly, in *Potter*, the defendant entered a convenience store and drew a revolver. There were two employees who each gave the defendant money out of two cash registers. The court, in holding that there could be only one robbery, stated, "[W]hen the lives of all employees in a store are threatened and endangered by the use or threatened use of a firearm incident to the theft of their employer's money or property, a single robbery with firearms is committed." 204 S.E.2d at 659.

---

2. The factual issue of whether or not the military policeman was in constructive possession of the money taken need not detain us, since during the providence inquiry, appellant admitted this fact. The parties did not ask that the taking of this property be alleged in the robbery specification involving Sergeant Sleva.

3. Appellant was originally charged with wrongful appropriation of these items. Prior to trial, the military judge granted a defense motion for multiplicity and dismissed this charge.

4. Specific statutory provision stating: "When the same conduct ... results in death, injury, [or] loss ... of two or more victims, ... there are as many offenses as there are victims."

In the federal courts, the issue has arisen most often in the context of the federal Bank Robbery Act, 18 USC § 2113. In *United States v. Canty*, 469 F.2d 114 (D.C.Cir.1972), the defendants were convicted of four counts of armed robbery, one count for each bank teller robbed. The court concluded that unlike general theft and robbery statutes, this statute was intended to reach the thefts or robbery of banks. *Id.* at 126. Congress had shown no intent to permit multiple punishments, and since only one bank had been robbed, only one conviction for bank robbery could be sustained. *Id.; but see United States v. Gibson*, 820 F.2d 692 (5th Cir.1987)(conviction under 18 USC § 2111 on two counts of robbing two tellers at U.S. Post Office).

In determining whether to adopt the one-robbery theory or the multiple-robbery theory, courts have been guided by one common principle, namely, whether it can be discerned from the statute and legislative history what the legislative intent was as to the allowable unit of prosecution. *Canty*, 469 F.2d at 126; *Perkins*, 607 P.2d at 1203; *Davis*, 498 A.2d at 246. Considering this principle and the helpful authorities cited above, we begin our analysis by looking to the plain text of Article 122. It states:

> Any person subject to this chapter who with intent to steal takes anything of value from the person or in the presence of another, against his will, by means of force or violence or fear of immediate or future injury to his person or property or *to the person* or property of a relative or member of his family or *of anyone in his company at the time of the robbery*, is guilty of robbery and shall be punished as a court-martial may direct.

(Emphasis added.)

The words in emphasis above arguably demonstrate a congressional intent that contemplates the presence of others during the crime, *i.e.*, multiple victims during a single robbery. Indeed, a logical interpretation of the words "anyone in his company" would

suggest a direct application to the current circumstance. However, it is not altogether clear whether the statute is addressing a situation like the case at bar or like that encountered in *United States v. Parker*, 17 USCMA 545, 38 CMR 343 (1968).

In *Parker*, two victims, Marsland and Holmes, were accosted by the accused and two others. Marsland was forced to surrender his watch and twenty dollars, and Holmes was forced to surrender twenty dollars he possessed. We concluded that a robbery of several persons, where property is removed from each person, involves a separate act and a separate intent toward each victim. *Id.* at 546, 38 CMR at 344. Therefore, we held that the two robberies perpetrated against Marsland and Holmes were separate acts and separately punishable.

The Government has relied on *Parker* in advancing its theory that in this case, one robbery occurred against the PX courier and a separate robbery occurred with respect to the military policeman. However, *Parker*, while a useful point of departure in the analysis, is only relevant to the extent distinct property is taken from each individual. Consequently, *Parker* is inapt to the analysis of the situation where both individuals jointly possess the same entity's property. We, therefore, look to the plain text and legislative history of Article 122 and not *Parker* to determine whether Congress intended separate convictions and punishments upon facts like those presented here.

Like many of the punitive articles, Article 122 was enacted in 1950. Act of May 5, 1950, ch. 169, 64 Stat. 107, 140. Nowhere in the House, Senate, or Conference reports to Chapter 169 is the offense of robbery specifically addressed.[5] As for the issue of punishment, Congress, in passing the Uniform Code of Military Justice, provided the President a relatively broad grant of authority in Article 56, UCMJ, 10 USC § 856, which states: "The punishment which a court-mar-

---

5. Interestingly, Conference Report No. 81–1946 (1950) on H.R. 4080, 81st Cong. (1949), specifically addresses Article 121, UCMJ, 10 USC § 921, the offense of larceny. One might have thought this an appropriate place to raise the issue of victims in the context of robbery convictions.

tial may direct for an offense may not exceed such limits as the President may prescribe for that offense." Congress has left Article 56 and Article 122 unchanged since the Act of May 5, 1950.

Unless a statutory intent to permit multiple punishments is stated "clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses[.]" *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *see United States v. Miller*, 47 MJ 352, 357 (1997). Since Congress has expressed no such intent, we hold that the forcible taking of property belonging to one entity from the person or presence of multiple individuals jointly or constructively possessing the property on behalf of the entity is one offense chargeable under Article 122.[6] In so holding, we are mindful of the fact that an important objective of Article 122 is to vindicate the right of individuals to remain free of the use of force or violence against their person. Given the development of our case law and the statutory scheme set out by Congress and the President, we believe our holding does not diminish the interest in protecting individuals.

Since our holding does not disturb the result reached in *Parker*, multiple robbery victims from whom distinct property is taken are adequately vindicated. The sentencing authority may consider the force or violence perpetrated against others present in calculating an appropriate sentence of no confinement to 10 years. If a firearm is used, the calculation adjusts from no confinement to 15 years. *See* paras. 47e(1) and (2), Manual for Courts–Martial, United States (2000 ed.).[7]

In the context of a factual scenario like that presented in this case, the perpetrator may be liable for the lesser-included offense of aggravated assault. Paras. 47d(4)

and (5), Part IV, Manual, *supra.* If the evidence shows that the force and violence that is the means for perpetrating the robbery is also the means by which grievous bodily harm is inflicted, liability for the lesser-included offense will not lie. *United States v. Walker*, 8 USCMA 640, 643, 25 CMR 144, 147 (1958). Conversely, as in this case, liability for the lesser-included offense of intentional infliction of grievous bodily harm in violation of Article 128, UCMJ, 10 USC § 928, may lie if the violence committed against one or more of the victims is gratuitous and distinct from the violence necessary to effect the robbery. However, even when violence found to be part and parcel of the robbery under *Walker* is "so greatly in excess of that required to steal that his victim is permanently disabled or disfigured," the perpetrator may be liable for a separate offense. *United States v. Goins*, 18 USCMA 395, 398–99, 40 CMR 107, 110–11 (1969)("When a person bent on robbery uses force and violence so greatly in excess of that required to steal that his victim is permanently disabled or disfigured, the robber can be held to have committed maiming").

Finally, if during the course of a robbery, a killing results, the robbery and the resulting homicide are separately chargeable. *See* Para. 43a(4), Manual, *supra.* Therefore, our precedents and the scheme established by the President ensure that the interest in protecting the person of robbery victims and others who may be present during the crime is properly vindicated.

*Conclusion*

In this case, since both the military policeman and the civilian courier were jointly or constructively in possession of funds on behalf of the PX when appellant and his cohort robbed them, we hold that only one robbery occurred. Absent the gratuitous vi-

---

6. We note that a number of civilian jurisdictions that have adopted the multiple-robbery theory rely on the sentencing authority's discretion to order concurrent sentences to guard against an unreasonable multiplication of charges. In the military justice system, however, the maximum punishment is arrived at by aggregating the consecutive penalties authorized for each offense. RCM 1003(c)(1)(A)(i) and 1005(e)(*l*) Discussion, Manual for Courts–Martial, United States (2000

ed.). Therefore, we expressly reject the Government's contention that in the context of this case, "had there been 5, 10, or 20 MP escorts ... you would indeed have 6, 11, or 21 specifications of robbery." Answer to Final Brief at 8 n. 5. There simply is no evidence that either Congress or the President intended such an absurd sentencing result.

7. All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.

olence against the MP, we would consolidate the two specifications. However, given the attack on the MP, we hold that a conviction of the lesser-included offense of intentional infliction of grievous bodily harm against the MP may be affirmed, in addition to a conviction of robbery of the courier.[8]

### Decision

The decision of the United States Army Court of Criminal Appeals is reversed as to the greater offense of robbery in specification 2 of Charge IV and as to sentence, but affirmed as to the lesser offense of aggravated assault in specification 2 of Charge IV and in all other respects. The record of trial is returned to the Judge Advocate General of the Army for remand to that court, which may reassess the sentence or order a sentence rehearing.[9]

---

**8.** We conclude that any issue of notice as it relates to the lesser offense committed against the MP is resolved by the broad wording of the robbery specifications alleging "by means of force" which encompasses the aggravated assault. *Walker*, 8 USCMA at 642, 25 CMR at 146.

**9.** We note in passing the curious decision on the part of the Government to charge appellant for the wrongful appropriation of the military police-man's pistol, handcuffs, and radio, as opposed to a separate robbery of those items. While we choose not to judge the wisdom of this decision, it appears to be inconsistent with the Government's argument that there is a compelling interest in protecting the victim's person from the assault aspect of the crime of robbery. It appears the Government could have charged a separate robbery without resorting to the novel theory advanced at trial and here on review.