Argued and submitted May 29; resubmitted en banc July 17, affirmed
October 9, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES LEWIS GLASPEY,
*Appellant.*

## 00FE0217AB; A112752

55 P3d 562

Rankin Johnson IV, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

BREWER, J.

Armstrong, J., dissenting.

## BREWER, J.

Defendant appeals from his convictions and sentences on two counts of fourth-degree assault. ORS 163.160. He asserts that the trial court erred in failing to enter a single conviction on the two counts and, further, in sentencing him separately on each conviction. We affirm.

Although fourth-degree assault generally is a misdemeanor offense, it is a Class C felony if "[t]he assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim." ORS 163.160(3)(c). The offenses for which defendant was convicted arose from an episode in which he assaulted his wife in the presence of their two minor sons. He was charged by indictment with separate offenses arising from that conduct, with each count alleging that the assault was witnessed by a different child.

Defendant pleaded no contest to both counts and, at sentencing, argued that the offenses "merge for sentencing purposes." The trial court rejected his argument and sentenced defendant separately on each count. On appeal, defendant makes two arguments: (1) the charges constituted a single offense; and (2) in any event, they were not separately punishable.

■ Before addressing the merits of defendant's arguments, we consider the state's initial response that they were not properly preserved. At sentencing, defendant's attorney argued only that defendant's convictions merged for sentencing purposes but did not contend that only a single conviction was permitted. Because the two issues are analytically distinct, *see State v. Barnum*, 333 Or 297, 302-03, 39 P3d 178 (2002), the latter argument is not preserved merely by making the former. Therefore, we ordinarily would decline to consider defendant's contention that he could be convicted of only one offense. However, defendant's arguments on appeal are progressive, in the sense that his convictions could be separately punished only if separate convictions were properly

entered in the first place. Thus, our analysis would be incomplete if we failed to consider, albeit briefly, whether separate convictions were authorized.

■    We conclude that they were. Defendant could have been convicted of fourth-degree assault as a felony under ORS 163.160(3) on the separate bases that either of the children witnessed defendant's conduct. If the trial court had entered a conviction on only one count of fourth-degree felony assault and had dismissed the other, and if defendant's appeal resulted in a reversal, for insufficient evidence, of the count that was selected to serve as the basis for conviction, defendant would be entitled, albeit inappropriately, to a judgment of acquittal. Because defendant violated ORS 163.160(3) by engaging in the prohibited conduct in the presence of two children, he properly was charged and convicted of two counts of fourth-degree felony assault. *See Barnum,* 333 Or at 302-03 (applying principle to multiple burglary convictions); *see also State v. Barrett,* 331 Or 27, 36-37, 10 P3d 901 (2000) (applying principle to multiple aggravated murder convictions).

■    Accordingly, we turn to defendant's argument that, under ORS 161.067(2), only one sentence was authorized for the two convictions. ORS 161.067(2) provides that, "[w]hen the same conduct or criminal episode, though violating only one statutory provision involves *two or more victims,* there are as many separately punishable offenses as there are victims." (Emphasis added.) Defendant's premise is that there was a single victim of his conduct, his wife, because ORS 163.160(3) describes only the person against whom an assault is directly committed as "the victim," remitting any children present to the status of "witnesses." From that premise, defendant reasons that the trial court was not authorized to impose separate sentences on his convictions under ORS 161.067(2).[1] The state responds that each of the children also was a victim of defendant's conduct and, accordingly, ORS 161.067(2) authorized separate punishments.

---

[1] The parties agree, as do we, that none of the other subsections of ORS 161.067 is applicable to the present problem.

Whether the children were "victims" for purposes of ORS 163.160(3) and, thus, ORS 161.067(2), presents a problem of statutory construction, which we resolve using the template set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We first consider ORS 163.160, which provides:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2) Assault in the fourth degree is a Class A misdemeanor.

"(3) Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

"(a) The person has previously been convicted of assaulting the same victim;

"(b) The person has previously been convicted at least three times under this section or under equivalent laws of another jurisdiction and all of the assaults involved domestic violence, as defined in ORS 135.230; or

"(c) The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim.

"(4) For the purposes of subsection (3) of this section, an assault is witnessed if the assault is seen or directly perceived in any other manner by the child."

Defendant argues that the text of ORS 163.160(3) is clear and that it dictates the outcome. He asserts that, "[i]f the legislature had intended for the victim's child to be treated as a separate victim, it could easily have said so. By referring to the victim and the victim's child separately, the legislature put the two into separate classes." According to

defendant, "[i]nterpreting the statute to include the child-witnesses in the class of victims requires inserting that definition into the text," in violation of ORS 174.010.[2] As far as the context of ORS 163.160(3) is concerned, defendant acknowledges that the legislature has defined the term "victim" in a number of different statutory settings, but argues that each applies to listed statutory provisions and none expressly applies to ORS 163.160.

"Victim" is not defined in either ORS 163.160 or ORS 161.067, but the word's plain meaning cuts against defendant's argument. *See PGE*, 317 Or at 611 (words of common usage are to be given their plain, natural, and ordinary meaning when not otherwise defined by the legislature). A "victim," in ordinary terms, is "a person subjected to oppression, deprivation, or suffering." *Webster's Third New Int'l Dictionary* 2550 (unabridged ed 1993). That definition—in particular, "suffering"—logically can include any child who has witnessed an assault committed by or against his or her parent.

Of course, the ordinary meaning of the term takes the analysis only so far. As defendant points out, the legislature has, in ORS 163.160(3), expressly described the immediate object of an assault as the "victim," thereby arguably omitting persons who are indirectly harmed by an assault from that classification. However, both the purpose and the structure of ORS 163.160(3) itself are consistent with the broader, ordinary meaning of the term.

As to purpose, in order to elevate fourth-degree assault to a felony, the state is required to plead and prove as an element of the offense that a child witnessed the assault or that it was committed in the child's immediate presence. *See State v. Boots*, 308 Or 371, 375, 381 n 9, 780 P2d 725 (1989) (treating each aggravating circumstance for purposes of aggravated murder statute as an element of a separate and distinct crime that must be proved to the jury beyond a reasonable doubt). If the legislature had not been concerned that children exposed to assaults by or against a parent are

---

[2] ORS 174.010 admonishes courts, when interpreting statutes, not to "insert what has been omitted, or to omit what has been inserted."

harmed by such conduct and, thus, are additional victims of the conduct, it would have had no reason to enhance the seriousness of the offense from a misdemeanor to felony status based on children's witnessing of the conduct.[3]

The dissent disagrees. It acknowledges that the presence of a child or children is an "aggravating" factor, but it dismisses the only plausible explanation for that legislative choice. 184 Or App at 183-84 (Armstrong, J., dissenting). To justify its conclusion, the dissent uses two illustrations. The first is the example of a child who sleeps through an assault of his or her parent and, thus, might not be psychologically or emotionally harmed by the event. 184 Or App at 184 (Armstrong, J., dissenting). However, that illustration suffers from two flaws. First, it assumes, without citation to supporting authority, that an assault can be "witnessed" or committed in "the immediate presence" of an unconscious person. That assumption does not strike us as a foregone conclusion. Second, and more importantly, even assuming that defendant could have committed a felony assault by committing a misdemeanor assault in "the immediate presence" of a sleeping child, the dissent does not explain in general why the legislature would enhance the punishment for a domestic assault witnessed by a child if it did not regard the child as an additional victim. The reason for that omission is obvious: there is no plausible explanation besides the one we suggest. The dissent's second illustration of a child who may not "feel harmed" by witnessing an assault, 184 Or App at 184 n 5 (Armstrong, J., dissenting), requires the barest response: the fact that a victim might be hardened or numbed by rationalization to the spectacle of an assault does nothing to mitigate the harm inflicted.

■ As to the structure of ORS 163.160(3), many statutes creating offenses against persons do not use the term "victim" at all. *See, e.g.,* ORS 163.165 (third-degree assault); ORS 163.175 (second-degree assault); ORS 163.185 (first-degree

---

[3] The legislature has elsewhere criminalized conduct because children are caused to witness it. *See, e.g.,* ORS 163.575(1)(a) (defining the crime of endangering the welfare of a minor as inducing, causing, or permitting a minor to "witness" sexual conduct or sadomasochistic abuse); *see also State v. Goddard,* 178 Or App 538, 540, 37 P3d 1046, *rev den,* 334 Or 121 (2002) (describing child who witnessed conduct proscribed by ORS 163.575 as "the victim").

assault). However, we would not understand those offenses as having *no* victim for the purpose of ORS 161.067(2). In other words, the use or nonuse of the specific term "victim" in a substantive offense statute does not control whether, and to what extent, that substantive statute is subject to the sentencing principle established in ORS 161.067(2).

Moreover, given the need for three separate personal referents in ORS 163.160(3)—the defendant, the assaulted person, and certain children who may be present—the description of the assaulted person as "the victim" likely reflects nothing more than a convenient referent for that person. It need not be understood as excluding the specified children from that category. Rather, they are persons that the legislature has recognized as victims of the conduct prohibited in ORS 163.160(3).[4]

█    We next consider whether the children described in ORS 163.160(3) are victims for the purpose of ORS 161.067(2), that is, for purposes of separate sentencing of defendant's convictions. The dissent is correct that it would not be logical to construe "victim" as the term is used in ORS 161.067(2) more broadly than its meaning under a statute describing an underlying substantive offense. However, where, as here, the gravamen of the elevated crime involves harm to children, the problem does not arise; children who are harmed by witnessing the assault are, in fact, victims within the contemplation of ORS 163.160(3). Moreover, nothing in ORS 161.067(2) or its surrounding context suggests an intention to restrict the definition of victim to a more limited class of persons than is specified for the underlying offense.

---

[4] Assuming, for the sake of argument, that ORS 163.160(3) is ambiguous, its legislative history also supports our understanding. The 1997 legislature enacted ORS 163.160(3) as part of Senate Bill 553. On March 14, 1997, Senator Kate Brown, the bill's sponsor, testified before the Senate Crime and Corrections Committee regarding the deleterious effects on children caused by witnessing domestic violence. Minutes, Senate Committee on Crime and Corrections, SB 553, March 14, 1997, 2 (statement of Senator Kate Brown). Other witnesses testified to the same effect, including Chris Gardner, the chair of the Children's Justice Act Task Force, who observed that, "when children are present [there is] more than one victim to the crime." Tape Recording, Senate Committee on Crime and Corrections, SB 553, March 14, 1997, Tape 37, Side A. In short, the legislative history leaves little doubt that the legislature intended, by enacting ORS 163.160(3), to prevent harm to children who witness domestic assaults.

For example, the legislature has adopted a broad meaning of "victim" for purposes of the sentencing framework governing the imposition of restitution. In 1977, after the Supreme Court had, in *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976), construed the predecessor statutory scheme as entitling only immediate victims to restitution, the legislature enacted ORS 137.103, which permits recovery by indirect pecuniary victims of crimes. *See State v. Dillon*, 292 Or 172, 175-78, 637 P2d 602 (1981) (discussing evolution of statutory restitution scheme). ORS 137.103(4) provides that " '[v]ictim' means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities[.]" Thus, defendant's children plainly would be victims in this case for purposes of an award of restitution if they had suffered pecuniary damage—such as counseling expenses—as a consequence of defendant's criminal conduct.

In addition, where the people, acting in their legislative capacity, have expressly defined the term "victim" for purposes of establishing "victim" rights at sentencing and in other contexts in criminal proceedings, they generally have selected the broad, ordinary meaning of the term. ORS 131.007, which expressly applies to three entire chapters of the Criminal Code (ORS chapters 136, 137, and 144), and seven specified criminal statutes,[5] defines "victim" to include "persons" who have suffered "social" or "psychological" harm "as a result of a crime." That definition is consistent with the ordinary broad meaning of "victim" and, although it does not expressly apply to ORS 163.160 or ORS 161.067(2), it extends the meaning of "victim" to persons suffering the sort of harm, albeit indirect or intangible, suffered by child witnesses of assaults as provided in the former statute.[6]

---

[5] For example, the broad definition applies to (1) the exclusion of victim witnesses at trial, ORS 40.385; (2) pretrial release criteria pertaining to victim protection, ORS 135.230(7)(a); (3) victim consultation regarding plea discussions, ORS 135.406; (4) pretrial protection of victims from certain contact and disclosures, ORS 135.970; (5) the right to appear and give a victim impact statement at sentencing, ORS 137.013; (6) aggravation in sentencing for physical assault due to victim's age, ORS 137.085; (7) imposition of consecutive sentences because of harm to different victims arising from a single criminal episode, ORS 137.123(5)(b); and (8) miscellaneous crime victims' rights, ORS 147.417 to 147.421.

[6] Both ORS 131.007 and ORS 161.067 trace their origins to Ballot Measure 10, a comprehensive victims' rights initiative passed in 1986. Section 13 of Measure 10

By contrast, if defendant's proposed narrow construction of the term "victim" were followed, it would produce the anomaly that defendant here could not be *separately* sentenced for crimes for which he could be *consecutively* sentenced under ORS 137.123(5)(b). That construction would violate the principle that, where possible, interacting statutes should be construed in such a manner as to give full meaning to each. ORS 174.010. The dissent's assertion that ORS 131.007 is either (1) somehow compatible with the dissent's view, because it does not *expressly* apply to ORS 161.067, 184 Or App at 187 (Armstrong, J., dissenting), or, alternatively, (2) irrelevant to our analysis, 184 Or App at 188 (Armstrong J., dissenting), altogether disregards that concern.

Next, the dissent quarrels with our reliance, in part, on the dictionary definition of "victim." 184 Or App at 186 (Armstrong, J., dissenting). Although it does not say so, the dissent may be relying on the line of cases holding that the ordinary meaning of a word does not control where the word has taken on a well-established meaning as a legal term of art. *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) ("Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used."). The problem is that the dissent never establishes the existence of any well-established legal meaning that is consistent with its view.

To be sure, the dissent tries to make such a connection by relying on *Stalheim*. The dissent argues that "*Stalheim* creates a default position in Oregon law [that] 'victim' means 'direct victim' unless the legislature has clearly indicated otherwise." 184 Or App at 187 (Armstrong, J., dissenting). That is a surprising and unsupportable assertion, given that the legislature expressly "obviated" the portion of the *Stalheim* decision on which the dissent relies in the next general legislative session. *State v. Barkley*, 315 Or 420, 435-36, 846 P2d 390 (1993). Moreover, *Stalheim*'s holding is not so broad. There, the Supreme Court "narrowly" interpreted the term "aggrieved party" as used in *former* ORS

became ORS 161.067, and section 17 was codified at ORS 131.007; the definition of victim in ORS 131.007 is unchanged to this date.

137.540(10) (1975), *amended by* Or Laws 1977, ch 380, § 2, *subsection repealed by,* Or Laws 1981, ch 671, § 1, to refer to the "direct victim of a crime." *Stalheim,* 275 Or at 688. It does not follow from that conclusion that, to be the "victim" of a crime, a person must be the immediate object of the defendant's conduct, especially where the statutory text and context evince a broader meaning.

Finally, the dissent's exposition of the history of ORS 161.067, particularly its rather ironic assertion that the statute "brought simplicity" to a convoluted area of criminal law, 184 Or App at 186 (Armstrong J., dissenting), is interesting in the abstract, but it sheds no useful light on the present problem. There is nothing in the historical path leading to enactment of the statute to suggest that the legislature meant to adopt the narrow meaning of "victim" proposed by the dissent.

■ In combination, the ordinary meaning of "victim," the purpose and structure of ORS 163.160(3), and the context of both ORS 163.160(3) and ORS 161.067(2), manifest a legislative intent that children who witness a domestic assault be considered victims for purposes of determining whether the defendant may be separately punished for each conviction arising from the assault. The legislature's failure in ORS 163.160(3) to expressly describe such children as victims does not compel a different conclusion. Defendant's conduct exposed multiple victims to harm that the legislature explicitly has recognized and condemned. The trial court did not err in sentencing defendant separately on each of his convictions.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that the trial court properly imposed separate sentences against defendant for convictions for two counts of fourth-degree assault based on a single assault of defendant's wife. Each conviction involved a count that alleged that a different child of defendant and his wife witnessed the assault, which elevated each count from a misdemeanor to a felony. *See* ORS 163.160(3). According to the majority, each child was also a victim of the assault. Because

defendant's wife and children were victims of the assault, defendant could be punished separately on each assault count under ORS 161.067(2), which provides that,

> "[w]hen the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."

The majority is wrong. As I will explain, the reference to "victim" in ORS 161.067(2) is to the person who is directly harmed by the conduct that a statute makes criminal. Thus, the victim of a murder is the person killed, the victim of a robbery is the person robbed, the victim of a rape is the person raped, and the victim of an assault is the person assaulted. *See, e.g.*, *State v. McNeil*, 170 Or App 407, 12 P3d 992 (2000) (victim of burglary committed by entry with intent to commit assault was the owner of the dwelling, while victim of assault was the person assaulted; if they were different each crime had a different victim). That terminology is so prevalent in our reported cases that I have been unable to find an example of a different meaning for "victim" when it is used in the substantive context of what constitutes a crime. The Supreme Court adopted that meaning in *State v. Stalheim*, 275 Or 683, 688, 552 P2d 829 (1976), in which it determined that the "victim" of a crime is the "direct victim" unless there is a clear legislative determination otherwise.

The majority expands the normal meaning of "victim" in a way that subjects defendant to punishment beyond what the legislature intended. In essence, the majority holds that the presence of a child who witnesses a fourth-degree assault does not merely aggravate that crime from a misdemeanor to a felony. Rather, each child witness is a victim of the assault distinct from the person assaulted, with the result that the court may impose a separate punishment for each child witness. Five child witnesses, thus, can result in five separate felony punishments for a single assault that, in the absence of a child witness, would be only a single misdemeanor.[1]

---

[1] The person actually assaulted is undoubtedly a victim of the assault. Thus, the majority's reasoning would actually appear to permit separate punishments equal to the number of child witnesses plus one, provided that the state charged the offenses properly.

The majority reaches its result by extending the definition of "victim" to include anyone whose involvement with a crime may aggravate the seriousness of the offense. As authority for that action, it relies on a definition of "victim" that the people[2] adopted for a different purpose and then applies that definition to a statute to which the people expressly intended that it not apply. When the people expanded the normal meaning of "victim," they did so in order to give individuals and entities other than the direct victim of a crime certain rights in the criminal justice process and to permit the court to order a convicted defendant to pay compensation to those individuals and entities. The people carefully avoided applying that expanded definition to specific substantive issues, such as what constitutes a separately punishable crime. The current opinion, thus, applies the definition of "victim" to a situation to which the people did not intend it to apply.

In explaining why the majority's expansion of the normal meaning of "victim" is incorrect, I will discuss four points: (1) ORS 163.160, the statute that defines the crime of which defendant was convicted, expressly describes the "victim" of the assault as the person injured; it does not use that term to describe those whose presence constitutes an aggravating factor; (2) under ORS 161.067(2), which describes what are separately punishable offenses, "victim" has its normal meaning of "direct victim"; (3) the dictionary definition of "victim" has no relevance to the meaning of the term in defining a crime; and (4) when the people adopted ORS 131.007, which defines "victim" for the purpose of the victims' rights statutes, they intentionally refused to apply that definition to ORS 161.067.

## ORS 163.160(3)

Determining who is the victim of a crime necessarily begins with the statute that creates the crime. Defendant was convicted of two counts of fourth-degree felony assault arising out of a single incident in which one person, his wife, suffered personal injury. Two of defendant's and the victim's

---

[2] I refer to the people rather than the legislature because the crucial statutes were part of an initiative that the people adopted in 1986.

minor children witnessed the assault. Fourth-degree assault consists of causing physical injury to another person intentionally, knowingly, or recklessly, or doing so with criminal negligence by means of a deadly weapon. ORS 163.160(1). It is normally a Class A misdemeanor. ORS 163.160(2). However, under ORS 163.160(3) it becomes a Class C felony when:

> "(a) The person has previously been convicted of assaulting *the same victim*;
>
> "(b) The person has previously been convicted at least three times under this section or under equivalent laws of another jurisdiction and all of the assaults involved domestic violence, as defined in ORS 135.230; or
>
> "(c) The assault is committed in the immediate presence of, or is witnessed by, the person's or *the victim's* minor child or stepchild or a minor child residing within the household of the person or *the victim*."

(Emphasis added.)

Defendant was indicted for, and convicted of, two counts of fourth-degree felony assault; each count alleged that a different child witnessed the same assault. The majority holds that those convictions are for separately punishable offenses under ORS 161.067(2). The basis for that holding is its conclusion that each child was a victim of the crime.

The majority does not begin its analysis by attempting to determine how the legislature and the people used the word in the statutes in question. Rather, it looks to a dictionary definition that has no apparent relevance to that use. It also gives significant weight to the definition of "victim" in ORS 131.007, a definition that expressly does not apply to those statutes. The majority makes no significant effort to determine the meaning of the word in the context of the statute itself. Unlike the majority, I will begin with the substantive statutes.

There is clearly only one victim of a misdemeanor assault: the person who suffers physical injury. The same is true for felony assault under the aggravating factors described in ORS 163.160(3)(a) and (b). Indeed, ORS 163.160(3)(a) states as the aggravating factor that the person

"has previously been convicted of assaulting *the same victim*[.]" In this case the aggravating factor is ORS 163.160(3)(c), that the assault is witnessed by "the person's *or the victim's* minor child or stepchild," or by a minor child residing in the household "of the person *or victim*." (Emphasis added.) The statute thus clearly distinguishes between the person who is the victim of the assault and the child whose presence at, or witnessing of, the assault makes it a felony. Nothing in the statute suggests that the child is a victim *for the purpose of defining the offense*, and the clear implication is to the contrary.[3] Indeed, nothing in the statute requires that the child be a victim in any sense of the word; the aggravating factor does not depend on whether the assault harmed the child in any respect.[4] The child may have slept through the assault, or the assaulter may be a protector whom the child believes to be rescuing the child from an abusive parent.[5] Indeed, the child may be an infant who has no idea what is happening or a teenager who does not care.

## ORS 161.067

Under the plain language of ORS 163.160(3), thus, the only victim of fourth-degree felony assault is the person who suffers physical injury. Two indictments were nevertheless proper in this case, each alleging that a different child witnessed the assault, because the jury might have found that one child was a witness and the other was not. The state

---

[3] The majority suggests that the need to describe three separate categories of people led the legislature to use "the victim" simply for convenience. 184 Or App at 177. However, if the legislature had intended the child witnesses to be victims, it would not have used "the victim" to refer to the person injured. Rather, its wording clearly distinguishes between the child witness whose presence makes the crime a felony and the actual victim of the crime.

[4] The majority refers to comments in the legislative history that refer to the harm that a child who witnesses an assault may suffer. 184 Or App at 177 n 4. Those comments explain the legislature's reason for making fourth-degree assault a felony when there is a child witness; they do not support the majority's conclusion that the legislature also intended to create a separately punishable crime in those circumstances.

[5] A father may have deserted his family and failed to pay child support for many years. If the father suddenly returns and gets into an altercation with his two children's stepfather that results in a black eye to the father, it may well be that the children will not feel harmed in the slightest. The black eye may, however, constitute a physical injury, and, if the stepfather is the aggressor, then he may be guilty of two counts of fourth-degree felony assault, subject under the current opinion to two separate punishments.

needed to prove that at least one child was a witness in order to prove that the assault was a felony. The question of whether each indictment charged a separately punishable offense depends, however, on the application of ORS 161.067(2) to 163.160(3). ORS 161.067(2) provides that, "[w]hen the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims." ORS 161.067(2) does not expressly define who is a "victim" for this purpose, but it is necessarily connected to the substantive law. Thus, it refers the court to the statute that defines the offense in question in order to determine who is a victim. It does not contain any basis for determining the number of victims but is limited to the consequences that follow when there is more than one. Determining the number of victims is necessarily a matter for the statutes that create the crimes.

The context for the adoption of ORS 161.067 supports that conclusion. Before its adoption[6] the issue of "merger of convictions" and "merger of sentencing" was one of the most convoluted and controversial aspects of Oregon criminal law. *See, e.g., State v. Kessler*, 297 Or 460, 686 P2d 345 (1984); *State v. Linthwaite*, 295 Or 162, 665 P2d 863 (1983); *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979). We followed the Supreme Court's somewhat opaque decisions with strong expressions of discontent and without always correctly divining its intent. *See, e.g., State v. Kessler*, 65 Or App 380, 382 n 1, 671 P2d 749 (1983), *rev'd*, 297 Or 460, 686 P2d 345 (1984) ("The law we follow ought not to be the law."). One aspect of the law that was clear before the adoption of ORS 161.067 was that there could be only one sentence for a robbery that constituted a single criminal episode, even if it had two or more victims. *See, e.g., State v. Perkins*, 45 Or App 91, 607 P2d 1202 (1980) (defendant robbed restaurant while threatening both cook and waitress).

---

[6] As I discuss below, ORS 161.067 was part of Ballot Measure 10, which the people adopted at the 1986 general election. The 1985 Legislative Assembly had previously adopted *former* ORS 161.062, *repealed by* Or Laws 1999, ch 136, § 1, which was identical in most respects. Until the repeal of *former* ORS 161.062 in 1999, the two statutes operated in uncomfortable tandem. Therefore, in discussing the law before the adoption of ORS 161.067, I am in fact discussing the law before the adoption of ORS 161.062. That does not affect my point.

ORS 161.067 brought simplicity to that situation. Among other things, ORS 161.067(2) provides that there are always as many separately punishable offenses as there are victims, thereby overruling the contrary holdings of *Cloutier* and *Perkins*. There is no indication in the statute or in its context, including the cases that it overruled, that "victim" means anything other than the direct victim, the person whose direct injury makes the act a crime. There is also no indication that ORS 161.067 would require a different determination of who is the victim of a crime from what the substantive statutes provide.

## DICTIONARY DEFINITIONS

The majority does not carefully analyze either the assault statute or the purpose and context of ORS 161.067. Rather, it relies primarily on the definitions of "victim" in a dictionary and in ORS 131.007. The dictionary definitions are of little assistance because they do not consider the use of the word as referring to a victim of a crime. The four definitions refer to (1) "a living being sacrificed to some deity or in the performance of a religious rite"; (2) "someone put to death, tortured, or mulcted by another : a person subjected to oppression, deprivation, or suffering"; (3) "someone who suffers death, loss, or injury in an undertaking of his own"; and (4) "someone tricked, duped, or subjected to hardship : someone badly used or taken advantage of." *Webster's Third New Int'l Dictionary* 2550 (unabridged ed 1993). Definitions (2) and (4) could include a victim of a crime, in the sense in which lawyers and courts have traditionally used the word, but nothing about those definitions is unique to the criminal law or relates to how to determine the "victim" of a criminal offense. The dictionary does not help us to decide whether the people intended to use the word differently from its usual legal meaning when it adopted this statute.

## ORS 131.007

The majority appears to place great weight on the definition of "victim" in ORS 131.007, which provides:

"As used in ORS 40.385, 135.230, 135.406, 135.970, 147.417, 147.419 and 147.421 and in ORS chapters 136, 137 and 144, except as otherwise specifically provided or unless

the context requires otherwise, 'victim' means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime and includes, in the case of a homicide or abuse of corpse in any degree, a member of the immediate family of the decedent and, in the case of a minor victim, the legal guardian of the minor. In no event shall the criminal defendant be considered a victim."

There are two obvious aspects to that statute. First, its apparent purpose is to expand the criminal law definition of "victim" well beyond the "direct victim" of the crime. Second, and most significantly, it limits the use of that expanded definition to specifically defined statutes, all of which have the same general purpose. The reasons both for the expansion of the traditional definition and its limited application come from the context in which it was adopted. The purpose of the definition was to expand the rights of those indirectly affected by a crime to participate in the criminal justice process. It was part of the same initiative that enacted ORS 161.067, but ORS 161.067 is *not* one of the statutes to which the expanded definition of "victim" applies. For that reason, the majority's reliance on ORS 131.007 in construing ORS 161.067(2) is incorrect.

The context for ORS 131.007 begins with *Stalheim*, in which the question was whether the court could order a person convicted of criminally negligent homicide to make reparation payments to the victim's family under *former* ORS 137.540(10) (1975), *repealed by* Or Laws 1981, ch 671, § 1, which provided for "reparation or restitution to the aggrieved party for damage or loss by [the] offense." 275 Or at 685. The Supreme Court held that the statute limited reparation or restitution payments to *"the direct victim* of a crime, and not to other persons who suffer loss because of the victim's death or injury." *Id.* at 688 (emphasis added). The court refused to extend liability beyond the direct victim without an express legislative instruction to do so. The court based its decision on its understanding that the common meaning of "victim" in the criminal context is the person who is directly harmed by the criminal conduct; it used the phrase "direct victim" to make that point clear. In a sense, *Stalheim* creates a default position in Oregon law: "victim" means "direct victim" unless the legislature has clearly indicated otherwise.

After *Stalheim*, the legislature amended the restitution statutes by creating a broader definition of victim that applied to those statutes. Or Laws 1977, ch 371, § 1(4), *codified as* ORS 137.103(4); *see State v. Hval*, 174 Or App 164, 174-76, 25 P3d 958, *rev den*, 332 Or 559 (2001). It did not apply that broader definition to laws that create a crime. In 1986, the people adopted Measure 10, which modified several evidentiary and criminal procedural statutes and created a number of procedural rights for victims of criminal offenses. As part of creating those procedural rights, section 17 of Measure 10 enacted what is now ORS 131.007 in order to define the "victims" who were entitled to those rights. As originally adopted, ORS 131.007 applied to OEC 615 and to ORS chapters 136, 137, and 144. Or Laws 1987, ch 2, § 17. Subsequent amendments have applied it to additional victims' rights provisions. Or Laws 1993, ch 294, § 3; Or Laws 1997, ch 313, § 30.

By its express terms, ORS 131.007 does not apply to three substantive provisions of Measure 10. Section 8, *codified as* ORS 41.415, provides that, in a prosecution for criminal homicide, "a photograph of *the victim* while alive" is admissible when offered by the state. (Emphasis added.) Section 9 amended OEC 609 to expand the use of previous convictions for impeachment; it contains no reference to a victim. Finally, section 13 enacted ORS 161.067, which among other things, provides that there are as many separately punishable offenses as there are victims.

ORS 131.007, thus, was connected to those portions of Measure 10 that provided procedural benefits to victims, such as exemption from exclusion at trial, section 5, consideration in setting trial dates, section 4, and notice of pending parole decisions, sections 14 and 15. On the other hand, ORS 131.007 does not apply to the more limited portions of Measure 10 that do not expand victims' rights in that fashion. The structure of Measure 10 shows a conscious decision *not* to apply ORS 131.007 to the sections to which it does not expressly apply. ORS 41.415 specifically refers to "*the* victim" of a homicide in a way that is inconsistent with the word meaning anything other than the person killed—that is, the direct victim of the homicide. ORS 161.067 does not involve a

victim's procedural rights but, rather, establishes substantive rules for determining the number of offenses and when offenses are separately punishable. ORS 131.007 plays no role in determining its meaning. Rather, in the context of previous cases on the subject, ORS 161.067(2) necessarily refers to direct victims, not to the broader class of victims defined in ORS 131.007 for an unrelated purpose, when it defines the number of separately punishable offenses.[7] So far as ORS 161.067 is concerned, the Supreme Court's limitation of "victim" to "direct victim" continues to apply; the people have not only failed to modify that limitation but have consciously decided to follow it.

"Victim" for substantive criminal law retains its traditional meaning of "direct victim." There is nothing ambiguous about that conclusion. Although it was proper for the state to bring indictments for two counts of fourth-degree assault in order to allow the jury to convict even if it believed that one of the children was not a witness, under ORS 161.067(2) those two counts constitute only one separately punishable offense. *Cf. State v. Barnett*, 331 Or 27, 37, 10 P3d 901 (2000) (court could enter one judgment for aggravated murder, specifically enumerating each aggravating factor). The majority errs in concluding otherwise.

---

[7] For this reason, ORS 137.123(5)(b), which provides for consecutive sentences, is irrelevant to this case. There cannot be consecutive sentences unless there are separately punishable offenses, and ORS 161.067 provides the basis for determining that.