*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

––––––––––––––––

**UNITED STATES**
Appellee

**v.**

**Tanner J. FORRESTER, Corporal**
United States Marine Corps, Appellant

**No. 17-0049**
Crim. App. No. 201500295

Argued April 25, 2017—Decided August 16, 2017

Military Judge: Michael D. Libretto

For Appellant: *Major Benjamin A. Robles,* USMC (argued) (on brief); *Lieutenant Commander William Geraty,* JAGC, USN.

For Appellee: *Lieutenant Commander Justin C. Henderson,* JAGC, USN (argued); *Lieutenant Robert J. Miller,* JAGC, USN, and *Brian K. Keller*, Esq. (on brief).

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY and Judge SPARKS joined. Judge OHLSON filed a separate dissenting opinion, in which Senior Judge ERDMANN joined.

––––––––––––––––

Judge RYAN delivered the opinion of the Court.

We granted Appellant's petition to review the following issue:

> Whether punishing the same transaction of obtaining child pornography with four convictions unreasonably exaggerates Appellant's criminality and triples his punitive exposure, constituting an unreasonable multiplication of charges.

Appellant was convicted of six specifications of possessing child pornography on four separate "materials" that contained child pornography, not the "same transaction of obtaining child pornography." The offense of possessing child pornography under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012), and *Manual for Courts-Martial, United States* pt. IV, para. 68b (2012 ed.)

(*MCM)*, is tied to "material that contains" illicit visual depictions of child pornography, not the quantity or variety of visual depictions. *MCM* pt. IV, para. 68b.c.(1). Consequently, we hold that the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) did not abuse its discretion under Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 (2012), in approving the findings and sentence in Appellant's case.

## I. PROCEDURAL HISTORY

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of six specifications of wrongful possession of child pornography, in violation of Article 134, UCMJ. Appellant was initially charged with seven specifications. Specifications 1, 3, 5, and 6 alleged that Appellant possessed digital images of a minor, or what appeared to be a minor, engaging in sexually explicit conduct, on two external Seagate hard drives, a Hewlett Packard (HP) laptop hard drive, and a Google e-mail account. Specifications 2, 4, and 7 alleged that Appellant possessed a digital video of a minor, or what appears to be a minor, engaging in sexually explicit conduct on the two external hard drives and the laptop hard drive.

Paragraph 68b of pt. IV of the *MCM*, effective January 12, 2012, specifically enumerated the offense of possessing child pornography under Article 134, UCMJ, and set the maximum sentence for such a violation to a dishonorable discharge, forfeiture of all pay and allowances, and confinement for ten years. *MCM* pt. IV, para. 68b.e.(1) (as amended by Exec. Order No. 13,593, 76 Fed. Reg. 78,451, 78,458–62 (Dec. 13, 2011) (effective Jan. 12, 2012)). The date range alleged for Specifications 1 through 4 (relating to the black Seagate hard drive and HP laptop) covered periods before and after this effective date.[1] To avoid ambiguity in the findings, the military judge severed Specifications 1

---

[1] By contrast, the entire date range involving the Google e-mail account was prior to the effective date of the amendment, and the entire date range involving the blue Seagate hard drive was after the effective date of the amendment.

through 4 into eight new specifications, each half of which covered the pre- and post-effective dates of pt. IV, para. 68b, respectively.

Appellant was acquitted of the specifications pertaining to the digital video file. The final specifications for which Appellant was convicted read as follows:

> In that [Appellant], did, at unknown locations, between on or about *29 April 2011 and on or about 11 January 2012*, knowingly and wrongfully possess, on a *black in color Seagate External Hard Drive*, child pornography, to wit: digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct . . . .

> . . . In that [Appellant], did at unknown locations, between on or about *12 January 2012 and on or about 1 May 2013*, knowingly and wrongfully possess, on a *black in color Seagate External Hard Drive*, child pornography, to wit: digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct . . . .

> . . . .

> . . . In that [Appellant], did, at unknown locations, between on or about *29 April 2011 and on or about 11 January 2012*, knowingly and wrongfully possess, on a *Hewlett Packard Laptop Computer Hard Drive*, child pornography, to wit: digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct . . . .

> . . . In that [Appellant], did, at unknown locations, between on or about *12 January 2012 and on or about 14 January 2014*, knowingly and wrongfully possess, on a *Hewlett Packard Laptop Computer Hard Drive*, child pornography, to wit: digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct . . . .

> . . . .

> . . . In that [Appellant], did, at unknown locations, between on or about *7 August 2011 and on or about 2 October 2011*, knowingly and wrongfully possess, in a *Google electronic mail account*, child pornography, to wit: digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct . . . .

> . . . .
>
> > . . . In that [Appellant], did, at unknown locations, between on or about *19 February 2012 and on or about 1 May 2013*, knowingly and wrongfully possess, on a *blue in color Seagate External Hard Drive*, child pornography, to wit: digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct . . . .

Emphasis added.

The military judge then merged four of the previously severed specifications back into two specifications, resulting in four total convictions for possession of child pornography—i.e., one for each of the charged materials containing images of child pornography.[2] After the military judge announced his findings, Appellant moved "for the sole Charge and all Specifications thereunder to be merged into a single specification for purposes of sentencing only." Appellant argued that "the nature of all the images are exactly the same with regards to each specification, as is the date range. And the only difference is the device on which it was charged." The military judge denied the motion, and sentenced Appellant to forty months of confinement, a dishonorable discharge, forfeiture of all pay and allowances, and a reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On appeal under Article 66(c), UCMJ, the NMCCA affirmed the findings and sentence. *United States v. Forrester*, No. NMCCA 201500295, 2016 CCA LEXIS 519, at *8, 2016 WL 4529605, at *3 (N-M. Ct. Crim. App. Aug. 30, 2016) (unpublished). Applying the five factors outlined in *United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001), the court concluded that the four specifications for possession of child pornography did not constitute an unreasonable multi-

---

[2] The evidence used to support these specifications was a set of twenty-three visually similar or identical images selected for detailed forensic analysis from among the images that were contained in each charged device.

plication of charges for sentencing. *Forrester*, 2016 CCA
LEXIS 519, at \*4, 2016 WL 4529605, at \*2. The court reject-
ed Appellant's argument that his conduct reflected a single
ongoing act of possession. *Id*. at \*4–5, 2016 WL 4529605, at
\*2. Instead, the court reasoned that each charged possession
was a separately punishable transaction, and that the four
specifications were "aimed at distinctly separate criminal
acts." *Id*. at \*5, 2016 WL 4529605, at \*2 (citing *United States
v. Campbell*, 66 M.J. 578, 583 (N-M. Ct. Crim. App. 2008),
*rev'd in part on other grounds*, 68 M.J. 217 (C.A.A.F. 2009));
*United States v. Planck*, 493 F.3d 501, 505 (5th Cir. 2007)).
Consequently, the NMCCA concluded that Appellant's crim-
inality was not misrepresented or unfairly exaggerated, and
that the Government's charging scheme was reasonable. *Id*.
at \*6, 2015 WL 4529605, at \*2.

## II. FACTS

On May 1, 2013, LCpl JL, Appellant's shipmate, discov-
ered images of child pornography while formatting two of
Appellant's Seagate external hard drives—one black and one
blue. Upon discovering these images and while Appellant
was sleeping in his bunk, LCpl JL alerted his chain of com-
mand, who in turn alerted CMAA DW. CMAA DW then took
custody of the hard drives. Shortly thereafter, Appellant
consented to a search and seizure of his electronics and bed
space and Naval Criminal Investigatory Service (NCIS)
agents seized both external Seagate hard drives, among oth-
er devices. Several months later, NCIS agents seized addi-
tional electronic devices from Appellant's residence in North
Carolina, including Appellant's personal HP laptop. An ini-
tial review by NCIS revealed over 600 image and video files
(including some duplicates) of suspected child pornography
spread across the seized devices. Of those over 600 files, the
investigators selected twenty-four[3] files (twenty-three imag-
es and one video) for a detailed forensic analysis. These
twenty-four files were located on the black and blue Seagate
hard drives, on the HP laptop computer, and as embedded

---

[3] Twenty-four is the maximum number of files that could be
submitted in a single request per the forensic examination unit's
policy.

attachments in messages sent and received by the Google e-mail account.

When NCIS agents confronted Appellant about the child pornography, Appellant admitted to downloading child pornography to his laptop and transferring it to other devices. Appellant made clear that he understood the process of making backups and that he produced backups of his computer files "to make sure that I have all my stuff" and that he would do so by taking a "mass file" and "[j]ust drag[ging] and drop[ping it] into the hard drive."

At trial, the Government's forensic expert testified as to how and when the child pornography files were transferred between Appellant's various devices during the charged time periods. Hash values for the child pornography files were found:

> on multiple locations, on multiple drives, including backups of other devices on the HP laptop, an e-mail on the HP laptop, in two distinct folders on the black Seagate hard drive and the blue Seagate hard drive, and then in some photo cache databases that are generated so you can put pictures on your iPod, there were 3 on each of the black and blue Seagate hard drives.

The analyst was unable to determine where the files "originally were downloaded or where they came from," but found the earliest instances of the files in an iPod backup file created on the HP laptop in 2010. On August 7, 2011, Appellant used his (i.e., the user "tanner forrester['s]") iPhone to send the files to his personal Google e-mail account in a series of seven messages. Attached to each of these seven messages was a batch of five files, selected from a folder on the phone labeled "[l]ittle girls," some of which were selected for the detailed forensic analysis.

"[A]t various times, [the child pornography files] were chosen from the HP laptop and from an unknown device to put on other devices," including the black and blue Seagate hard drives. These transfers created caches that the analyst used to determine where and when the files had been previously stored or transferred. The files transferred to both the blue and black Seagate hard drives retained file permissions

identifying them as belonging to a profile labeled "Tanner Forrester" on the HP laptop. Furthermore, databases associated with media players and streaming applications on the HP laptop contained references to files with the same names as child pornography files discovered on the other devices. These databases referenced files in several directories on the hard drive, including:

> c:\users\tanner forrester\pictures\cute little girls\little
> c:\users\tanner forrester\pictures\other\cute little girls\little

The same files were found on the black and blue hard drives, but within differently named folders:

> [Drive:]\*the other*\little
> [Drive:]\*picks*\*the other*\other\cute little girls\little

Emphasis added.

In addition to the e-mail account and Seagate hard drives, the analyst also found visually identical versions of these twenty-three child pornography files, among others, on Appellant's HP laptop. By the time law enforcement seized the laptop in 2014, the files had been deleted from one area of the hard drive—the space normally used to store and view image files. However, the analyst recovered copies of the image files from a separate part of the laptop's hard drive dedicated to storage for an e-mail application. On October 2, 2011, Appellant synced his Google e-mail account, which contained e-mails with the twenty-three images as attachments, using a software application called "Windows Live Mail." This syncing process stored the e-mail messages, and the attached images, on the laptop, where they remained freely accessible up until its seizure in 2014.

## III. DISCUSSION

Appellant casts the issue as an "unreasonable multiplication of charges" for sentencing. Rule for Courts-Martial (R.C.M.) 307(c)(4) provides that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Courts ordinarily decide merger requests at the sentencing phase by

considering the *Quiroz* factors, as well as any other relevant factors.[4] *United States v. Campbell*, 71 M.J. 19, 24 n.9 (C.A.A.F. 2012). Ultimately, with respect to both the findings and the sentence, "the application of the *Quiroz* factors involves a reasonableness determination . . . and is a matter well within the discretion of the CCA in the exercise of its Article 66(c) . . . powers." *United States v. Anderson*, 68 M.J. 378, 386 (C.A.A.F. 2010).

Appellant sought merger of the specifications only at the sentencing phase and does not allege prosecutorial overreach. Indeed, his argument turns on the assertion that by bringing four specifications, rather than one, the Government "punish[ed] one act of possession four times." That question is better approached as a question of multiplicity rather than unreasonable multiplication of charges.[5] *See*

---

[4] In *Quiroz*, this Court endorsed five factors for evaluating claims of unreasonable multiplication:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications? (2) Is each charge and specification aimed at distinctly separate criminal acts? (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality? (4) Does the number of charges and specifications *unfairly* increase the appellant's punitive exposure? (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338 (internal quotation marks omitted) (citation omitted).

[5] Of course Appellant waived, or at least forfeited any multiplicity claim by failing to raise it at trial. *United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000) ("[D]ouble jeopardy claims, including those founded in multiplicity, are waived by failure to make a timely motion to dismiss, unless they rise to the level of plain error." (citation omitted)). And because the specifications are not facially duplicative, there is no plain error. *Id.* ("An appellant may show plain error and overcome [forfeiture] by showing that the specifications are 'facially duplicative,' that is, factually the same." (citation omitted) (internal quotation marks omit-

*Quiroz*, 55 M.J at 339–40 ("The Double Jeopardy Clause of the Fifth Amendment and its codification in Article 44 . . . together with the Sixth Amendment right to a fair trial, prohibit multiple trials and multiple sentences for the 'same' offense." (citation omitted)). "We review multiplicity claims de novo." *Anderson*, 68 M.J. at 385 (citation omitted).

We conclude that the four specifications in this case represent four separate criminal acts under the relevant statute, rather than one criminal act charged four times, and that the specifications were not multiplicitous—thus the second *Quiroz* factor fails. This also ends the *Quiroz* analysis: it simply was not unreasonable to sentence Appellant for four specifications that reflected "distinctly separate criminal acts." 55 M.J. at 338 (internal quotation marks omitted) (citation omitted). Therefore, the NMCCA did not abuse its broad discretion under Article 66(c), UCMJ, in approving the findings and sentence.

A.

Appellant's argument illustrates the analytic conflation of unreasonable multiplication of charges and multiplicity in cases where several offenses are charged as separate specifications under the same statute. We reiterate that the concept of multiplicity is grounded in the Double Jeopardy Clause of the Fifth Amendment, which prohibits multiple punishments "for the same offen[s]e." U.S. Const. amend. V; *see also* Article 44(a), UCMJ, 10 U.S.C. § 844(a) (2012) ("No person may, without his consent, be tried a second time for the same offense."). The Double Jeopardy Clause prohibits "multiplicitous prosecutions . . . . [i.e.,] when the government charges a defendant twice for what is essentially a single crime." *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012).

One instance of multiplicity, the kind theoretically implicated in this case, occurs when "charges for multiple violations *of the same statute* are predicated on arguably the

---

ted)). We nonetheless must undertake a multiplicity analysis to assess the second *Quiroz* factor.

same criminal conduct."**6** *United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013) (emphasis added) (citing *Planck*, 493 F.3d at 503). To resolve this "species" of multiplicity, the Court "must first determine the 'allowable unit of prosecution,' . . . which is the *actus reus* of the defendant." *Planck*, 493 F.3d at 503 (citations omitted); *see also Bell v. United States*, 349 U.S. 81, 83 (1955). This question is significant for the purposes of determining a maximum sentence; R.C.M. 1003(c)(1)(C) provides that "[w]hen the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for *each separate offense.*" *See also United States v. Szentmiklosi*, 55 M.J. 487, 491 n.6 (C.A.A.F. 2001) (emphasis added).

By contrast, unreasonable multiplication of charges concerns "those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *Quiroz*, 55 M.J. at 337. But the "unit of prosecution" question is relevant to—and in this case, dispositive on—the issue of unreasonable multiplication of charges. *Cf. United States v. Paxton*, 64 M.J. 484, 491 (C.A.A.F. 2007) (evaluating the second *Quiroz* factor by reference to the Court's earlier multiplicity analysis). Ultimately, *Quiroz* reflects a reasonableness determination. *Anderson*, 68 M.J. at 386. And the second *Quiroz* factor asks whether "each charge and specification [is] aimed at distinctly separate criminal acts." *Quiroz*, 55 M.J. at 338 (internal quotation marks omitted) (citation omitted).

To resolve Appellant's arguments about the Government's charging scheme, and the fairness of his sentence, we

---

**6** This type of multiplicity can be distinguished from the multiplicity alleged in *Campbell*, 71 M.J. 19. In that case, Campbell argued that a single act—wrongfully withdrawing painkillers from a machine—was improperly transformed into three separate crimes: a false official statement, a larceny, and a possession of a controlled substance. *Id.* at 20–21. Here, by contrast, Appellant argues that the Government transformed a single criminal act—possessing child pornography—into multiple violations of the same offense.

must therefore determine whether Appellant committed one punishable act or four. *See United States v. Mejia*, 545 F.3d 179, 204 (2d Cir. 2008) (framing Mejia's claim that three firearm charges should be merged into one as a claim of multiplicity, and asking "whether the three underlying shootings constituted separate predicate crimes under [the relevant firearms statute]"). We conclude that where acts constitute separate criminal conduct under the applicable statute, as amplified here by the *MCM*, drafting separate charges and cumulative punishments for those acts are not unreasonable.

**B.**

To determine whether charging a separate specification for each device (with the associated separate punishments) was appropriate, we must identify the allowable "unit of prosecution" for the crime of possessing child pornography under Article 134, UCMJ. *Bell*, 349 U.S. at 83; *Szentmiklosi*, 55 M.J. at 490; *cf. Paxton*, 64 M.J. at 491. To answer this question, we consider the President's listing of offenses in pt. IV of the *MCM. See United States v. Neblock* 45 M.J. 191, 197–99 (C.A.A.F. 1996) (discerning congressional intent under Article 134, UCMJ, by reference to the President's explanation of an enumerated offense in pt. IV of the *MCM*). While "we are not bound by the President's interpretation of the elements of substantive offenses," *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017) (citations omitted), both his interpretation and "listing of offenses under Article 134, UCMJ, is *persuasive* authority to the courts." *United States v. Jones*, 68 M.J. 465, 471–72 (C.A.A.F. 2010) (citations omitted).

The question is whether Appellee committed only one offense or at least four, permitting a discrete punishment for each. "Unless a statutory intent to permit multiple punishments is stated 'clearly and without ambiguity, doubt will be resolved against turning a *single transaction* into multiple offenses[.]' " *Szentmiklosi*, 55 M.J. at 491 (alteration in original) (emphasis added) (quoting *Bell*, 349 U.S. at 84). However, if possession under the circumstances is a "distinct or discrete-act offense, separate convictions are allowed in ac-

cordance with the number of discrete acts." *Neblock*, 45 M.J. at 197.

The rules of statutory construction are helpful in analyzing provisions of the *MCM. See United States v. Fetrow,* 76 M.J. 181, 185–86 (C.A.A.F. 2017). We start with the language of the text. *United States v. Scranton*, 30 M.J. 322, 324 (C.M.A. 1990); *see also Neblock*, 45 M.J. at 198. Possession of child pornography under Article 134, UCMJ, includes two elements: (1) that the accused knowingly and wrongfully possessed, received, or viewed child pornography; and (2) that the conduct was prejudicial to good order and discipline or service discrediting. *MCM* pt. IV, 68b.b.(1). "Possessing" means "exercising control over something"—which may be direct or constructive, and must be "knowing and conscious." *Id.* at pt. IV, para. 68b.c.(5). "Child [p]ornography" means "*material* that *contains* either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *Id.* at pt. IV, para. 68b.c.(1) (emphasis added). A visual depiction includes:

> any developed or undeveloped photograph, picture, film or video; *any digital or computer image*, picture, film, or video made by any means, including those transmitted by any means including streaming media, even if not stored in a permanent format; or *any digital or electronic data capable of conversion into a visual image.*

*Id.* at pt. IV, para. 68b.c.(8) (emphasis added).

By defining "[c]hild [p]ornography" as "*material* that *contains*" illicit visual depictions, *id.* at pt. IV, para. 68b.c.(1) (emphasis added), pt. IV, para. 68b prohibits knowing and conscious possession of the physical media or storage location "that contains" the offensive images. *See id.* at pt. IV, para. 68b.c.(5). Because pt. IV, para. 68b defines "[c]hild [p]ornography" not as images but "material[s]" that contain them, it matters not that the images extant on each material listed in the bill of particulars were visually similar or identical for each count of possession. Under the plain language of pt. IV, para. 68b, Appellant completed the offense of possession each time he knowingly possessed, directly or con-

structively, a distinct "material"—which includes Appellant's HP laptop, Seagate hard drives, and Google e-mail account—that contained visual depictions of child pornography.[7] *Cf. Neblock*, 45 M.J. at 197 (noting that " 'committing indecent acts or liberties with a child' " is a "discrete-act offense [and therefore] separate convictions are allowed in accordance with the number of discrete acts"); *United States v. Falk*, 50 M.J. 385, 391 (C.A.A.F. 1999) ("The word 'contain' suggests that the visual depiction must have some sort of host, such as a . . . computer disk."). As such, Appellant's possession of each distinct material reflected a discrete and separately punishable unit of possession.

Other courts' interpretation of the statute on which pt. IV, para. 68b is based supports the Government's charging scheme. According to the Drafters' Analysis of the *MCM*, pt.

---

[7] Paragraph 68b describes "constructive" possession as the act of storing "something" in a remote storage space, such as a locker or a car "to which [the accused] may return to retrieve it." *MCM* pt. IV, para. 68b.c.(5). Appellant was convicted of storing child pornography in his web-based mail account, a cloud-based service. *See* Dena G. McCorry, *With Cloud Technology, Who Owns Your Data?*, 8 Fed. Cts. L. Rev. 125, 129 (2014). Cloud-based services "allow[] users to store data and applications on remote servers owned by others." Eric Johnson, Note, *Lost in the Cloud: Cloud Storage, Privacy, and Suggestions for Protecting Users' Data*, 69 Stan. L. Rev. 867, 872 (2017) (alteration in original) (citation omitted) (internal quotation marks omitted). "These remote servers are essentially global storage facilities [used] to store information electronically and grant access to uploaded information using any electronic device from any location at any time." *Id.* (citation omitted) (internal quotation marks omitted). Though Appellant may not have physically controlled the server on which the child pornography within his e-mail account was located, he constructively possessed the child pornography by storing it and retaining the capacity to return to retrieve it. *Cf. Woerner*, 709 F.3d at 536–37 (finding that the jury could have reasonably inferred that Woerner exercised constructive possession over child pornography located within several digital cloud-based services, including an e-mail account).

IV, para. 68b is "generally based on 18 U.S.C. § 2252A, as well as military custom and regulation." *MCM*, Analysis of Punitive Articles app. 23 at A23–22 (2012 ed.). That statute similarly prohibits possession of "*any . . . material that contains* an image of child pornography." 18 U.S.C. § 2252A(a)(5)(B) (2012) (emphasis added). Several federal courts have interpreted this provision to permit separate counts of possession for each device or material possessed that contains images of child pornography. *See Woerner*, 709 F.3d at 541; *United States v. Hinkeldey*, 626 F.3d 1010, 1014 (8th Cir. 2010); *cf. Chiaradio*, 684 F.3d at 275–76; *United States v. Richards*, 659 F.3d 527, 548 (6th Cir. 2011); *United States v. Overton*, 573 F.3d 679, 698 (9th Cir. 2009).

In view of the Drafters' Analysis of pt. IV, para. 68b, the language of pt. IV, para. 68b, and federal precedents interpreting its substantive forebearer, § 2252A, we conclude that the President, with respect to pt. IV, para. 68b and Article 134, UCMJ, intended to separately criminalize and punish possession of each "material that contains" child pornography.[8] Accordingly, because we agree that Appellant committed four distinct criminal acts of possession under Article 134, UCMJ, we conclude that the NMCCA did not abuse its broad discretion in approving Appellant's sentence.

## IV. DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

[8] Various policy arguments can be made to support the President or Congress adopting a different "unit of prosecution," to include either a separate specification for each image or a single specification even where an accused possesses thousands of images on multiple devices. However, selecting a per-device/material unit is not irrational, as illustrated by this case, where the accused placed images on multiple materials to ensure and maintain access to the illicit images, even if one or more of the storage devices were confiscated or destroyed.

14

Judge OHLSON, with whom Senior Judge ERDMANN joins, dissenting.

The majority does an admirable job of reciting the facts in this case and thus there is no reason to repeat those details here. Suffice it to say that the key takeaway from this case is that Appellant was convicted at court-martial of multiple specifications of possession of child pornography, and the evidence in support of those specifications consisted of a set of seemingly identical images that appeared on each of four different electronic devices owned by Appellant—two external hard drives, a laptop hard drive, and an electronic mail account. Thus, in its reductionist form, the fundamental issue that this Court must wrestle with in this case is captured by the following query: if a servicemember has an image of child pornography on one electronic device (such as a laptop) and has the *identical* image of child pornography on a different electronic device (such as a cell phone) can that servicemember properly be charged with *two separate* counts of possession of child pornography under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012)? I am not convinced that the answer to that question is "yes." Accordingly, I respectfully dissent.

The issue before us is not whether a statute *could* be written in such a manner as to criminalize each instance where an accused has an identical image of child pornography on different electronic devices. Rather, the issue is whether the current law *already* permits this prosecutorial approach. In seeking to address that issue, the applicable criminal provisions provide us with little guidance. First, Article 134, UCMJ, states that possession of child pornography includes two elements: (1) that the accused knowingly and wrongfully possessed child pornography; and (2) that the conduct was prejudicial to good order and discipline or was service discrediting. *Manual for Courts-Martial, United States* pt. IV, para. 68b.b.(1) (2012 ed.) (*MCM*). And second, the *MCM* says in pertinent part that "[c]hild [p]ornography" means "material that contains ... a visual depiction of [a] minor engaging in sexually explicit conduct." *Id.* at pt. IV, para. 68b.c.(1). That's it. There is nothing else in the UCMJ, in the *MCM*, or in this Court's case law that, in my view, sheds sufficient light on the central question of whether Ap-

pellant should have been charged with, or convicted of, *one* specification or *multiple* specifications of possession of child pornography.

Absent more clarity on this point, I conclude that multiple specifications in a case such as this are not authorized. In reaching this conclusion, I am guided by the Supreme Court case of *Bell v. United States*, 349 U.S. 81 (1955). In that Mann Act case, the defendant transported across state lines for "immoral purpose[s]" two women on the same trip and in the same vehicle. *Id.* at 82. After first pleading guilty to two counts of violating the Mann Act, the defendant appealed and argued that he had only committed a single offense. *Id.* In deciding that case, Justice Frankfurter stated that the key issue was what should be considered "the allowable unit of prosecution under a statute which does not explicitly give the answer." *Id.* at 81 (citation omitted).

Justice Frankfurter then opined as follows:

> It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions [about what constitutes the allowable unit of prosecution]. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. *When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.*

*Id.* at 83 (emphasis added).

Similarly, in the military justice system, when Congress and the President fail to clearly indicate in plain language the allowable unit of prosecution under the provisions of a specific statute, this Court should resolve this lack of clarity in favor of an accused. As we stated in *United States v. Szentmiklosi*, "Unless a statutory intent to permit multiple punishments is stated 'clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses[.]'" 55 M.J. 487, 491 (C.A.A.F. 2001) (alteration in original) (quoting *Bell*, 349 U.S. at 84).

Based on this analysis, I conclude that the multiple specifications of which Appellant was convicted do not pass muster under the plain language of the applicable criminal provisions because the incorrect unit of prosecution was used in charging and convicting Appellant. Therefore, I would set aside the findings of guilty with respect to all but one of the child pornography possession specifications, dismiss the remaining child pornography possession specifications, set aside the sentence, and remand for the United States Navy-Marine Corps Court of Criminal Appeals to reassess the sentence.[1] Accordingly, I respectfully dissent.

---

[1] Although at trial Appellant sought to have the military judge merge the specifications for sentencing purposes only, I conclude that the resolution of the issue before us appropriately includes setting aside and dismissing three of the specifications of which Appellant was convicted. I base this conclusion on the following points: such a step is inherently necessary in an "allowable unit of prosecution" analysis; the invocation of "an unreasonable multiplication of charges" in the issue presented arguably raises the question of whether Appellant's convictions should stand; Appellant's initial brief to the Court stated that Appellant's conduct "properly comprised one offense of possession"; Appellant's reply brief stated that "[t]he Court should therefore dismiss all offenses but one and remand for resentencing"; and at oral argument, Appellant's counsel argued that Appellant should have his convictions "condensed into one" and "resentencing ordered."