# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40675

————————————

## UNITED STATES
*Appellee*

v.

## Aaron T. COLEY
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 February 2026

————————————

*Military Judge*: Tiny L. Bowman.

*Sentence*: Sentence adjudged 29 April 2024 by GCM convened at Grand Forks Air Force Base, North Dakota. Sentence entered by military judge on 30 June 2024: Dishonorable discharge, confinement for 5 years, and reduction to E-1.

*For Appellant*: Captain Joyclin N. Webster, USAF.

*For Appellee*: Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Jocelyn Q. Wright, USAF; Captain Heather R. Bezold, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and MCCALL, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge KEARLEY and Judge MCCALL joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a plea agreement, of three specifications of wrongfully possessing child pornography on divers occasions and one specification of wrongfully distributing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for five years, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant raises three issues on appeal: (1) whether Appellant's convictions for Specifications 1 and 3 of the Charge were multiplicitous and violated his rights against double jeopardy; (2) whether Appellant's sentence is inappropriately severe; and (3) whether the application of the 18 U.S.C. § 922 firearms prohibition to Appellant warrants correction.[2]

With respect to issue (3), we find no relief from this court is warranted. *See United States v. Johnson*, 86 M.J. 8, No. 24-0004, 2025 CAAF LEXIS 499, at *14 (C.A.A.F. 24 Jun. 2025) (holding the Courts of Criminal Appeals (CCAs) are not authorized to modify the 18 U.S.C. § 922 firearm prohibition indication on the staff judge advocate indorsement to the entry of judgment).

With respect to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

From approximately 20 August 2018 until 2 November 2021, Appellant was stationed at Misawa Air Base, Japan. On or about 3 November 2021, Appellant transferred to Grand Forks Air Force Base (AFB), North Dakota, where he lived on base in individual quarters.

On or about 9 March 2022, Appellant uploaded files of suspected child sexual abuse material (CSAM) to messaging groups on a social media application. On 27 March 2022, Appellant deployed from Grand Forks AFB to a location in Southwest Asia, where he arrived on 1 April 2022. While deployed, Appellant maintained his on-base residence at Grand Forks AFB.

---

[1] Unless otherwise indicated, all references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant personally raises issues (2) and (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

While Appellant was en route to the deployed location, on or about 30 March 2022, two of the files of suspected CSAM Appellant uploaded on or about 9 March 2022 were reported to the National Center for Missing and Exploited Children (NCMEC). The upload was from an Internet Protocol (IP) address in North Dakota. On or about 10 April 2022, NCMEC forwarded the report to the North Dakota Bureau of Criminal Investigation (NDBCI). NDBCI traced the IP address to Appellant and his residence on Grand Forks AFB. On or about 9 May 2022, NDBCI notified the Air Force Office of Special Investigations (OSI), which opened an investigation. From state authorities, OSI obtained evidence of additional files of suspected CSAM Appellant had uploaded onto his social media account on or about 9 March 2022.

On 8 June 2022, OSI agents at Grand Forks AFB and at Appellant's deployed location executed searches of Appellant's quarters at each location and seized multiple digital media devices. Subsequent forensic analysis identified suspected CSAM on three of Appellant's devices: a Samsung tablet seized at Appellant's Grand Forks AFB residence, and a Samsung cell phone and an ASUS cell phone seized at the deployed location. The suspected CSAM had been downloaded and saved onto these devices on various dates from 2020 to 2022.

Appellant was charged with four specifications of service-discrediting conduct in violation of Article 134, UCMJ. Pursuant to a plea agreement with the convening authority, Appellant pleaded guilty to all four specifications and entered into a stipulation of fact with the Government.

Specification 1 alleged, in pertinent part, that Appellant, in or near North Dakota, between on or about 3 November 2021 and on or about 27 March 2022, on divers occasions, knowingly and wrongfully possessed child pornography. According to the stipulation of fact, Appellant downloaded a total of 24 images and videos of child pornography onto his tablet between 3 November 2021 and 27 March 2022.

Specification 2 alleged Appellant knowingly and wrongfully possessed child pornography, on divers occasions, at or near the deployed location between on or about 31 March 2022 and on or about 10 June 2022. According to the stipulation of fact, Appellant possessed eight videos and one image of child pornography on his ASUS cell phone and four images of child pornography on his Samsung cell phone during this period.

Specification 3 alleged Appellant knowingly and wrongfully possessed child pornography, on divers occasions, in or near Japan between on or about 5 January 2020 and on or about 2 November 2021. According to the stipulation of fact, Appellant possessed 21 images of child pornography on his tablet during this period.

The stipulation of fact identified the images and videos associated with each of Specifications 1, 2, and 3 by distinct alphanumeric file names. Each of these three specifications involved the possession of images and/or videos that are not associated with the other two possession specifications.

Specification 4 alleged Appellant knowingly and wrongfully distributed child pornography in or near North Dakota on or about 9 March 2022. According to the stipulation of fact, Appellant uploaded and distributed seven images and videos of child pornography on social media to two user groups on or about that date.

Before accepting Appellant's guilty pleas, the military judge conducted a providency inquiry on the record with Appellant. Appellant agreed, *inter alia*, that the stipulation of fact was accurate and that he was guilty of the Charge and specifications. The Defense did not raise a motion or object on double jeopardy grounds.

## II. DISCUSSION

### A. Double Jeopardy

#### 1. Law

##### *a. Standard of Review and Waiver*

In general, double jeopardy is a question of law that appellate courts review de novo. *United States v. Driskill*, 84 M.J. 248, 252 (C.A.A.F. 2024) (citation omitted). However, an appellant's failure to preserve an issue at trial raises the question whether the appellant has forfeited or waived the issue on appeal. *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017). Whether an appellant has waived or forfeited an issue is a legal question we review de novo. *United States v. Schmidt*, 82 M.J. 68, 72 (C.A.A.F. 2022).

"[F]orfeiture is the failure to make the timely assertion of a right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (additional citation omitted). Appellate courts review forfeited issues for plain error. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citation omitted). Plain error occurs where "(1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation omitted). Where an error is of constitutional dimensions, an appellate court may not affirm the result unless the error was harmless beyond a reasonable doubt. *United States v. Mason*, 59 M.J. 416, 424 (C.A.A.F. 2004).

Unlike forfeiture, "[w]hen an issue is waived, 'it is extinguished and may not be raised on appeal.'" *United States v. Harborth*, 85 M.J. 469, 475 (C.A.A.F. 2025) (quoting *Gladue*, 67 M.J. at 313). "Waiver can occur either by a party's

intentional relinquishment or abandonment of a known right or by operation of law." *United States v. Day*, 83 M.J. 53, 56 (C.A.A.F. 2022) (citing *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018)). "Generally, an unconditional guilty plea operates to waive 'all defects which are neither jurisdictional nor a deprivation of due process of law.'" *United States v. Malone*, __ M.J. __, No. 25-0140, 2026 CAAF LEXIS 62, at *8 (C.A.A.F. 20 Jan. 2026) (quoting *Day*, 83 M.J. at 56) (additional citation omitted). This procedural waiver includes multiplicity issues, "*except when* multiplicity involves specifications that are 'facially duplicative,' that is, factually the same." *Id.* (quoting *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997)) (internal quotation marks and additional citations omitted); *see also United States v. Blackburn*, 80 M.J. 205, 209 (C.A.A.F. 2020) ("When constitutional rights are at issue, we have applied a presumption against finding waiver." (citation omitted)).

> Two offenses are not facially duplicative if each requires proof of a fact which the other does not. Rather than constituting a literal application of the elements test, determining whether two specifications are facially duplicative involves a realistic comparison of the two offenses to determine whether one is rationally derivative of the other. This analysis turns on both the factual conduct alleged in each specification and the providence inquiry conducted by the military judge at trial.

*United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004) (internal quotation marks and citations omitted).

Even when specifications are facially duplicative, an accused may expressly waive the multiplicity issue. *Malone*, 2026 CAAF LEXIS 62, at *8 (quoting *Lloyd*, 46 M.J. at 23). "An 'express' waiver occurs when there is 'the intentional relinquishment or abandonment of a known right,' and is accomplished via affirmative action by the accused or the accused's counsel." *Id.* at *9 (quoting *Gladue*, 67 M.J. at 313) (additional citation omitted)).

Under the applicable version of Article 66, UCMJ, 10 U.S.C. § 866, for cases involving offenses that occurred prior to 1 January 2021, a CCA has "special power . . . to revise a case notwithstanding the [appellant's] failure to preserve the objection at trial." *United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018). In such cases, the CCAs have a "unique statutory responsibility . . . to affirm 'only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.'" *Id.* (quoting *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (quoting Article 66(c), UCMJ))). In applicable cases, CCAs have discretion to determine the circumstances under which they

will exercise their Article 66, UCMJ, authority to pierce waiver or forfeiture to address an underlying error of law. *See id.* (quoting *Quiroz*, 55 M.J. at 338).

### b. Multiplicity

"No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V; *see also* Article 44(a), UCMJ, 10 U.S.C. § 844(a) ("No person may, without his consent, be tried a second time for the same offense."). "The Double Jeopardy Clause prohibits 'multiplicitous prosecutions . . . . [i.e.,] when the [G]overnment charges a defendant twice for what is essentially a single crime.'" *United States v. Forrester*, 76 M.J. 479, 484–85 (C.A.A.F. 2017) (omission and alteration in original) (quoting *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012)).

"One instance of multiplicity, the kind theoretically implicated in this case, occurs when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct." *Id.* at 485 (internal quotation marks, emphasis, and citations omitted). "The double jeopardy prohibition applies only where 'the same act or transaction' is involved." *United States v. Rice*, 80 M.J. 36, 40 (C.A.A.F. 2020) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)) (additional citations omitted); *see also United States v. Coleman*, 79 M.J. 100, 103 (C.A.A.F. 2019) ("[W]e determine whether the charges are based on separate acts. If so, the charges are not multiplicious because separate acts may be charged and punished separately."). "To resolve this 'species' of multiplicity, the Court 'must first determine the allowable unit of prosecution, . . . which is the actus reus of the defendant.'" *Forrester*, 76 M.J. at 485 (omission in original) (quoting *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007)) (additional citation omitted).

### c. Possession of Child Pornography Under Article 134, UCMJ

During the providency inquiry, the military judge advised Appellant that the elements of the offenses of possession of child pornography alleged in Specification 1 of the Charge consisted of the following:

> One, that between on or about 3 November 2021 and on or about 27 March 2022, in or near the state of North Dakota, on divers occasions, [Appellant] knowingly and wrongfully possessed child pornography, to wit: digital images and videos of a minor, or what appears to be a minor, engaging in sexually explicit conduct; and

> Two, that under the circumstances, the conduct . . . was of a nature to bring discredit upon the armed forces.

*See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 95.b.(1). Similarly, the military judge advised Appellant that the elements of Specification 3 of the Charge were:

> One, that between on or about 5 January 2020 and on or about 2 November 2021, in or near the country of Japan, on divers occasions, [Appellant] knowingly and wrongfully possessed child pornography, to wit: digital images and videos of a minor, or what appears to be a minor, engaging in sexually explicit conduct; and

> Two, that under the circumstances, the conduct . . . w[as] of a nature to bring discredit upon the armed forces.

*See id.* For purposes of Article 134, UCMJ, "'[c]hild pornography' means material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 95.c.(4).

> Visual depiction includes any developed or undeveloped photograph, picture, film, or video; any digital or computer image, picture, film, or video made by any means, including those transmitted by any means including streaming media, even if not stored in a permanent format; or any digital or electronic data capable of conversion into a visual image.

*MCM*, pt. IV, ¶ 95.c.(11).

In *Forrester*, the United States Court of Appeals for the Armed Forces (CAAF) commented on the definitions of "child pornography" and "visual depiction" found in Part IV of the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), which are nearly identical to those definitions quoted above applicable to Appellant's case. 76 M.J. at 486. The CAAF explained:

> By defining "[c]hild [p]ornography" as "*material* that *contains*" illicit visual depictions, pt. IV, para. 68b[.c.(1) (2012 *MCM*),] prohibits knowing and conscious possession of the physical media or storage location "that contains" the offensive images. . . . Under the plain language of pt. IV, para. 68b, [the a]ppellant completed the offense of possession each time he knowingly possessed, directly or constructively, a distinct "material"—which includes [the a]ppellant's HP laptop, Seagate hard drives, and Google e-mail account—that contained visual depictions of child pornography. As such, [the a]ppellant's possession of each distinct material reflected a discrete and separately punishable unit of possession.

7

*Id.* (first and second alterations in original) (citations omitted).

### 2. Analysis

#### a. The Parties' Positions

On appeal, Appellant contends his convictions for Specifications 1 and 3 of the Charge were plainly erroneous. Specifically, Appellant argues these specifications are multiplicitous because both specifications are based on his possession of the same "material" containing illicit visual depictions—his Samsung tablet. Appellant argues he did not waive his constitutional protection against double jeopardy because there was no clear, knowing, and explicit waiver of such rights. Alternatively, if this court finds Appellant waived multiplicity, he contends this court should exercise its Article 66, UCMJ, authority to pierce waiver and address the error. Appellant requests this court "set aside [his] conviction of either Specification 1 or Specification 3 of the Charge."

In response, the Government argues Appellant's unconditional guilty plea did waive his multiplicity objection, and this court should not pierce his waiver. The Government contends Specifications 1 and 3 address distinct permissible units of prosecution, *i.e.*, data files, and arise from distinct criminal impulses, and are therefore not multiplicitous. Alternatively, the Government argues this court should not find plain error because at the time of Appellant's court-martial, "no court had held that files are not material that contains data capable of conversion into an image."

#### b. Waiver

The first step in our analysis is to determine whether Appellant waived his multiplicity claim. An unconditional guilty plea waives multiplicity objections unless the specifications at issue are facially duplicative. *Malone*, 2026 CAAF LEXIS 62, at *8. "[D]etermining whether two specifications are facially duplicative involves a realistic comparison of the two offenses to determine whether one is rationally derivative of the other." *Pauling*, 60 M.J. at 94.

In this case, we find Specifications 1 and 3 are not facially duplicative. Both specifications alleged Appellant, "on divers occasions, knowingly and wrongfully possess[ed] child pornography, to wit: digital images and videos of a minor, or what appears to be a minor, engaging in sexually explicit conduct, and that said conduct was of a nature to bring discredit on the armed forces." Neither specification identified any particular digital image, video, or material that contained the illicit images. Significantly, each specification alleged a different period of time and geographic location for the possession. Specification 1 alleged Appellant possessed child pornography between on or about 3 November 2021 and on or about 27 March 2022 in or near North Dakota; Specification 3 alleged Appellant possessed child pornography between on or about 5

January 2020 and on or about 2 November 2021 in or near Japan. The "on or about" language provides for the possibility of some temporal overlap between the two specifications. *See United States v. Simmons*, 82 M.J. 134, 139 (C.A.A.F. 2022) ("'[O]n or about' connotes a range of days to weeks." (citations omitted)). However, North Dakota is not in or near Japan, and Appellant cannot physically be in both places at the same time. Therefore, on their face, the two specifications do not allege factually the same conduct, but two instances of similar conduct on divers occasions in distinct places and at distinct times. In addition, the stipulation of fact indicates that when Appellant was in North Dakota, he obtained and possessed different images and videos from the ones he possessed in Japan. Accordingly, because the specifications are not facially duplicative, Appellant's unconditional guilty plea waived his multiplicity claim by operation of law. *See Malone*, 2026 CAAF LEXIS 62, at *8.

### c. To Pierce or Not to Pierce Waiver: United States v. Casillas

Having found waiver, because Specification 1 of the Charge pre-dates 1 January 2021, we next consider whether we should exercise our special authority under the applicable version of Article 66, UCMJ, to pierce waiver to address a legal error. *See Hardy*, 77 M.J. at 442. Appellant urges us to pierce any waiver; the Government contends we should not. In explicating their positions as to whether there is an underlying error to address, both parties refer extensively to this court's recent opinion in *United States v. Casillas*, No. ACM 40551, 2025 CCA LEXIS 445 (A.F. Ct. Crim. App. 18 Sep. 2025) (unpub. op.), *cert. for rev. filed*, __ M.J. __, 2026 CAAF LEXIS 42 (C.A.A.F. 12 Jan. 2026). In *Casillas*, this court set aside a finding of guilty as to possession of child pornography in violation of Article 134, UCMJ, on double jeopardy grounds, notwithstanding the defense's express waiver of the issue at trial. *Id*. at *21–29. However, both parties appear to misconstrue the holding in *Casillas*. In order to address the parties' misapprehensions and explain why, unlike *Casillas*, Appellant is not entitled to relief, we summarize the pertinent portion of that opinion below.

In *Casillas*, the appellant was tried by court-martial twice. *Id*. at *6–8. At the appellant's first court-martial he was convicted of, *inter alia*, "*within an iPhone XR*, knowingly and wrongfully possess[ing] child pornography, to wit: a visual depiction of minors, or what appears to be minors, engaging in sexually explicit conduct," in the Republic of Korea between on or about 1 December 2019 and on or about 24 March 2020. *Id*. at *8 (emphasis added). At the second court-martial, which was the subject of the court's opinion, the appellant was convicted of, *inter alia*, knowingly and wrongfully possessing child pornography within the Republic of Korea between on or about 1 December 2019 and on or about 18 March 2020. Although the specification of possession of child pornography in the second trial did not allege the specific material which

contained illicit images, the evidence presented at trial made it clear the images at issue were located and possessed on the same iPhone XR that was alleged in the first court-martial. *See id.* at *10, 25. Thus, although the particular images at issue in the second trial were not introduced at the first trial, the specification at issue in the second trial involved the same location, same time period, and same device containing illicit images as had the specification in the first trial.

In *Casillas*, this court "note[d] the CAAF in *Forrester* emphasized that the operative definition defines 'child pornography' as the 'material that contains' the illicit images, rather than the images themselves." *Id.* at *24 (citing *Forrester*, 76 M.J. at 486). We continued,

> Thus in *Forrester* it was permissible for the Government to prosecute separate specifications for each of the appellant's devices that contained illicit images, regardless of whether those images were the same or different from device to device, because it was the possession of the "material" containing the images (*i.e.*, the device) that represented each offense.

*Id.* (citing *Forrester*, 76 M.J. at 486). This court then found that in *Casillas*, at his second trial the appellant "was prosecuted again for the same act or transaction of possessing child pornography" as at his first trial because the images at issue were contained on the same iPhone XR for which he had been previously prosecuted, at the same location, and during the same time period. *Id.* at *26. This was so because at the first trial the Government had elected to charge the appellant's phone as the material containing the illicit images. *Id.* The Government's decision to charge the phone as the "material" was entirely permissible under *Forrester*; but as a result, the "child pornography" which the appellant was convicted of possessing at his first trial, *i.e.*, the "material" that contained the illicit images, was the iPhone XR. *Id.* Although the Government did not specifically allege the device—or any other "material"—in the specification at the second trial, any such material was contained and possessed on the same iPhone XR, and therefore included in the "child pornography" which the appellant had already been convicted of possessing. For these and other reasons, this court pierced the appellant's waiver of the double jeopardy issue, found prejudicial plain error, and set aside the finding of guilty as to possession of child pornography. *Id.* at *21–29.

We now return to the parties' contentions in the instant case. Appellant cites *Forrester* and *Casillas* in asserting that "the number of devices determines the number of offenses, not the number of images." In addition, Appellant cites the concurring opinion in *United States v. Patterson* for the principle that the date of an offense "is generally only an ancillary fact" that need not be

pleaded unless it is an essential element. No. ACM 40426, 2024 CCA LEXIS 399, at *53 (A.F. Ct. Crim. App. 27 Sep. 2024) (unpub. op.) (Warren, J., concurring in part and in the result), *aff'd*, 86 M.J. 24 (C.A.A.F. 2025). Therefore, Appellant reasons, because Specifications 1 and 3 of the Charge involve illicit images recovered from the same device—Appellant's tablet—albeit charged during different time periods, the specifications allege the same possession of child pornography and are multiplicitous with one another.

For its part, the Government contends that in *Casillas* this court misinterpreted and erroneously expanded *Forrester*. The Government appears to believe *Casillas* held that the "material" that contains the illicit images must be a "physical device" and that this court held "the Government can *never* charge [an electronic] file as the material that contains the image." The Government's brief endeavors to show how such a holding is inconsistent with a number of federal circuit and military appellate opinions.

Both of these positions misinterpret *Casillas*. As to the Government's argument, the holding in *Casillas* is not based on any requirement that the material *must be* a physical device. *Forrester* itself contradicts such a conclusion; in that case, one of the convictions the CAAF upheld involved possession on "a Google electronic mail account" rather than a physical device. 76 M.J. at 482. However, if *Forrester* stands for anything, it is that the Government *can* charge a physical device as the unit of prosecution for possession of child pornography in violation of Article 134, UCMJ. *See id.* at 485–87. *Casillas* did hold that where the Government *has* convicted an accused for possessing illicit images on a physical device as the unit of prosecution, as at Casillas's first trial, the prohibition on double jeopardy prohibits subsequent prosecution for different illicit images contained within that same physical device, the unit of prosecution, *during the same time period and in the same geographic location as previously alleged. See Casillas*, unpub. op. at *25–26. But *Casillas* does not hold that the "material" containing the illicit images must be physical rather than electronic in nature.

This brings us to Appellant's argument. Appellant contends that not only is a physical device the required unit of prosecution, but because time is not of the essence to the offense, Appellant's possession of illicit images on his tablet in Japan was the same offense as his later possession of different illicit images on that tablet in North Dakota. However, as described above, neither *Forrester* nor *Casillas* held that the Government is bound to rely on a physical device as the unit of prosecution, and the specifications at issue in this case did not

explicitly do so.[3] In addition, *Casillas* neither held nor implied that an accused cannot be guilty of separate offenses of possession of child pornography involving the same device where the acts of possession were committed at distinct times and in different geographic locations. Factually, Appellant's case is unlike *Casillas* in that significant respect. For these and other reasons, we decline to pierce Appellant's waiver of the multiplicity issue, and find no cause to disturb his convictions.

## B. Sentence Severity

### 1. Additional Background

Appellant's plea agreement provided the military judge would sentence him to confinement for no less than six months and no more than three years for each of the three possession specifications, and for no less than three years and no more than six years for the distribution specification, with all terms of confinement to run concurrently. In addition, the plea agreement required the military judge to adjudge a bad-conduct discharge if she did not adjudge a dishonorable discharge. The military judge sentenced Appellant to three years of confinement for each of the possession specifications and five years for the distribution, for a total of five years of confinement in addition to a dishonorable discharge and reduction to the grade of E-1.

### 2. Law

Courts of Criminal Appeals review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). We are required "to review the appropriateness of each punishment in the adjudged sentence." *United States v. Flores*, 84 M.J. 277, 281 (C.A.A.F. 2024) (citations omitted). Although the CCAs are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

---

[3] We do not reach the question of whether physical devices were the de facto units of prosecution involved in this case.

**3. Analysis**

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant contends his five-year term of confinement is inappropriately severe, and asks this court to reduce his confinement to four years. Appellant cites as "mitigating factors" instability and frequent relocations he experienced as a child, his expression of remorse and acknowledgment that he needs "treatment," and support from his family, as described in his unsworn statement.

Having carefully considered the record, we do not find Appellant's sentence inappropriately severe for his offenses. The images in question include graphic depictions of physical sexual abuse of actual young children. Appellant's decision to share CSAM with dozens of other users via social media was a particularly serious offense that, absent the plea agreement, carried a maximum potential term of 20 years in confinement. We find each part of the sentence, and the sentence as a whole, appropriate.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court