UNITED STATES, Appellee

v

WILLIAM C. GOINS, Sergeant, U. S.

Marine Corps, Appellant

18 USCMA 395, 40 CMR 107

---

*Captain John N. Stafford,* USMCR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant V. L. Evans,* JAGC, USNR.

*Lieutenant Anthony A. Derezinski,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Colonel C. R. Larouche,* USMC, and *Lieutenant Matthew J. Wheeler, Jr.,* JAGC, USN.

## Opinion of the Court

DARDEN, Judge:

This case requires a decision on whether the offenses of robbery and maiming are multiplicious for sentencing purposes because the force and violence necessary to prove a robbery charge are also the cause of the permanent damage constituting a maiming charge.

The appellant was tried on July 5, 1968, at Camp Courtney, Okinawa, by a general court-martial on a charge of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922, and a charge of maiming, in violation of Article 124, Uniform Code of Military Justice, 10 USC § 924. He pleaded guilty and was sentenced to a dishonorable discharge, to forfeit all pay and allowances, to be reduced to pay grade E–1, and to be confined at hard labor for seventeen years. In compliance with a pretrial agreement, the convening authority reduced the period of confinement to ten years. A Navy board of review affirmed the findings and sentence. This Court granted the accused's petition to review the issue of multiplicity.

According to a stipulation of facts, Sergeant Goins, the accused, and his victim, Sergeant Collier, together with a Private White, left the Enlisted Men's Club at Camp Hauge in Collier's sports car. Collier was in the driver's seat, White was next to him in the front passenger seat, and Goins sat in the back. At one point during the ride Collier stopped the car to give his coat to the accused, who was feeling chilled. When the ride was resumed, Goins picked up a wrench that had been secretly placed in the car by White, struck Collier on the head with it, and instructed Collier to stop the car. Goins then struck Collier two or three more times with the wrench and attempted to push him out of the automobile. White then took the wrench and, putting his knee on the victim's neck, proceeded to smash his skull with it until all movement ceased. Goins and White then carried their victim to the side of the road and left him there momentarily. They proceeded north in the car, turned off on a dirt road, and discarded the wrench and some shirts with blood on them. They then returned to the place where Sergeant Collier lay. Private White removed the wallet of Sergeant Collier that contained approximately $50.00. They divided the money. Sergeant Collier was later found by the side of the road. A search of the immediate area turned up three or four pieces of human skull. When he was taken to the hospital at Camp Kue, he was found to have multiple fractures of the skull. A large mass of his brain was protruding from an open wound on the left side of his head. After three surgical operations, Sergeant Collier survived but "he had not and did not show any signs of human type behavior response or understanding." The doctor who treated him gave this summary of his prognosis:

"Well, lack of improvement over the period of time of the last week or two that he was with me would

**396**

suggest that he had indeed sustained irreversable [sic] and severe damage to the brain and that his condition would most likely not change for the better, but over a period of time the complications of being in a vegetative state would gradually lead to his demise."

At trial, before the board of review, and before this Court, the accused contended that the robbery charge and the maiming charge are multiplicious.

This Court has decided no case on precisely the issue this one presents. In United States v Hicks, 6 USCMA 621, 20 CMR 337, the Court concluded that to sustain a charge of maiming under Article 124 only an intent to injure and not an intent to inflict serious injury is required.[1]

The accused's contention that robbery and maiming are multiplicious rests heavily on this Court's decisions in United States v McVey, 4 USCMA 167, 15 CMR 167, and United States v Walker, 8 USCMA 640, 25 CMR 144. In *McVey*, robbery and aggravated assault were held multiplicious where the "force and violence" of the robbery charge were the same as for the assault charge. Two accused attempted to strangle a taxi driver with a belt. When he broke loose, they hit him over the head with a wooden club. After he continued his fight, they took his taxicab and some foreign currency left in it. The Court held that the striking with the club and the strangling with the belt were not divisible and though they constituted greater force than was necessary to support an allegation of robbery, they were nonetheless essential to the robbery specification.

In *Walker*, robbery and an assault in which grievous bodily harm was intentionally inflicted were held to be multiplicious. There the accused and four others took the victim to an isolated area and beat him. The victim broke loose but was recaptured and robbed. In the process, the victim lost six teeth and suffered a wound requiring ten stitches in his mouth and one requiring nine stitches on the back of his head. The Court realized that the seriousness of the physical injuries from the assault that constituted the force and violence by which the robbery was committed differentiated this case from *McVey*, but it still thought the acts proving the force and violence "blend[ed] with the other necessary elements to establish the crime of robbery." United States v Walker, supra, at page 642.

Although the robbery specification in the instant case does not allege the specific means of "force and violence" used, the accused contends that from a reading of the stipulation of facts it is obvious that it was the wrench that supplied this element of the offense of robbery as well as the permanent brain damage of the maiming charge. He argues accordingly that where the acts that constitute the "force and violence" of the robbery charge are the same ones that cause the permanent injury of the maiming charge, the latter is a lesser included offense of the former and an accused can be punished only for the former. If the accused's position were sustained, the maximum period of confinement to which he could have been sentenced was ten years for the robbery instead of seventeen years for the robbery and the maiming. Despite reduction of the sentence to confinement to ten years under a pretrial agreement, the accused insists that the sentence should be reduced further or the findings set aside.

The Government's response is that robbery and maiming are separate of-

---

[1] Article 124 reads as follows:
"Any person subject to this chapter who, with intent to injure, disfigure, or disable, inflicts upon the person of another an injury which—
　　(1) seriously disfigures his person by any mutilation thereof;
　　(2) destroys or disables any member or organ of his body; or
　　(3) seriously diminishes his physical vigor by the injury of any member or organ;
is guilty of maiming and shall be punished as a court-martial may direct."

fenses under any of the several tests that have been applied to determine multiplicity.

The first of these tests is the "gravamen" or "juristic norms" test enunciated in United States v Beene, 4 USCMA 177, 15 CMR 177. In urging separateness under this test, the Government asserts that the gravamen of robbery is the larceny involved and that this offense primarily protects the right to peaceful ownership, possession, and enjoyment of one's personal property. The infringement of these rights is said to be unrelated to the offense of maiming, the gravamen of which is that "the act permanently disables the person 'to fight in defence of the king and country, and as a soldier protect himself on the field of battle.'" Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, at page 676.

Statutory definitions have enlarged on the common-law offense. But it is clear that in its origins the common-law offense was particularly applicable to members of the armed forces. The juristic norm is the protection of the bodily integrity of citizens, in addition to the general interests in their not becoming wards of the state. The essence of the offense of maiming is the permanency of the injury inflicted. Under robbery the permanency of the injury is an unnecessary and irrelevant showing.

The second of the tests under which the Government endeavors to show that robbery and maiming are separate is the elements test. Under this test the offenses are separate if each offense requires proof of an element not required to prove the other. Manual for Courts-Martial, United States, 1951, paragraph 76a(8). To prove a robbery, the Government asserts there is no need to show an intent to injure, disfigure, or disable the victim, and no actual injury to the victim has to be shown. On the other hand, the permanent nature of the injury is essential to sustain maiming. That a taking of the victim's property occurred while he was being maimed is irrelevant to

**398**

a prosecution for maiming. Proof of all the allegations in the robbery specification of this case would be inadequate to prove maiming, argues the Government, because the specification does not allege any kind of permanent injury. This argument continues that the proof of all the allegations in the maiming specification would not prove robbery because the specification fails to allege any kind of wrongful taking.

The facts test is the last of the three mentioned by the Government in its effort to defend against the issue of multiplicity. Under the facts test, each offense must require proof not required to prove the other. United States v Posnick, 8 USCMA 201, 24 CMR 11. Applying this test, the Government states that the robbery charge is supported by the theft of Collier's car and wallet together with the first blow or blows to his skull. At this point, maiming hardly could have been established. But after Sergeant Collier's body had been removed from the car and White resumed the beating, a new intent going beyond the force necessary to accomplish wrongful taking and a new criminal offense —maiming—are evident. The additional force that resulted in the permanent injury necessary to prove maiming was not a prerequisite of the wrongful taking that occurred later.

We agree with the conclusion of the law officer and the board of review that maiming is not a lesser offense of robbery even though the violence employed is the same in both charges. Our decision requires neither an overruling nor a modification of the Court's decisions in McVey and Walker. The element that distinguishes the force and violence in maiming from that in aggravated assault is the substantially permanent nature of the injury in maiming. Winthrop's Military Law and Precedents, supra; 57 CJS, Mayhem, § 3. The disfigurement, diminution of vigor, or destruction or disablement of a member or organ of one's body that are essential elements of maiming reflect a kind of injury that sets this offense apart. When a

person bent on robbery uses force and violence so greatly in excess of that required to steal that his victim is permanently disabled or disfigured, the robber can be held to have committed maiming. We hold, therefore, that the law officer did not err in treating these offenses as separate for sentencing purposes. The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

In my opinion, the evidence shows two acts sufficiently separate in time and condition to constitute separate offenses. Cf. United States v Ompad, 15 USCMA 593, 36 CMR 91.