# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 CALEB J. HOLMES**
**United States Army, Appellant**

ARMY 20180572

Headquarters, 1st Cavalry Division
Douglas K. Watkins and Jacob D. Bashore, Military Judges
Colonel Emily C. Schiffer, Staff Judge Advocate

For Appellant: Captain Benjamin A. Accinelli, JA (argued); Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Jack D. Einhorn, JA; Captain Benjamin A. Accinelli, JA (on brief); Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Captain Jason X. Hamilton, JA; Captain Benjamin A. Accinelli, JA (on reply brief).

For Appellee: Captain Christopher K. Wills, JA (argued); Colonel Steven P. Haight, JA; Major Craig J. Schapira, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain Christopher K. Wills, JA (on brief).

13 February 2020

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

On appeal, appellant argues his conviction for maiming is legally and factually insufficient because appellant acted in self-defense when he bit off a piece of Private First Class (PFC) AG's ear.[1] While we agree with appellant that the

--------

[1] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of failing to obey a lawful general regulation and one specification of maiming, in violation of Articles 92 and 124, Uniform Code of

(continued . . .)

evidence raised the possibility of self-defense, we find appellant's bite of PFC AG's ear was reasonably likely to cause grievous bodily harm, and appellant cannot avail himself of self-defense. Accordingly, we find appellant's maiming conviction legally and factually sufficient, and we affirm appellant's findings of guilty and sentence in our decretal paragraph.[2]

## BACKGROUND[3]

In early 2018, PFC AG and appellant were stationed at Camp Hovey, South Korea. The two knew each other from hanging out around a smoke pit outside of their barracks, and occasionally getting food together. On the evening of 3 February 2018, appellant and PFC AG left Camp Hovey and took a train to Uijeongbu, South Korea, where they went to the mall and eventually a bar to consume alcohol. Appellant was under the age of twenty-one at the time.

Although appellant and PFC AG were authorized to leave Camp Hovey that night, they were required to return and sign-in together no later than 0100 hours as part of a battle-buddy system policy. To ensure they returned in time to make curfew, they left the bar around 2315 hours and rode the train together back to Camp Hovey. On several occasions on the trip back to Camp Hovey, appellant attempted to exit the train. Though the parties dispute the reasons why appellant attempted to get off the train, they agree that PFC AG physically prevented appellant from disembarking the train on each of his attempts.

On appellant's last attempt to leave, PFC AG pulled appellant backward, via his hooded sweatshirt, onto a seat on the train. She then prevented appellant from leaving the seat by placing her arm over appellant, like a seatbelt, and holding onto a vertical metal pole on the other side of appellant's seat. Appellant attempted to physically move PFC AG's arm so he could get out of his seat, and when that was unsuccessful, he began to punch PFC AG's arm that was restraining him six or seven times. The punches were also unsuccessful, so appellant bit PFC AG's wrist.

---

(. . . continued)
Military Justice, 10 U.S.C. §§ 892 and 924 [UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge and confinement for eighteen months.

[2] We have given full and fair consideration to appellant's argument, raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that PFC AG's injury is insufficient to satisfy the elements of maiming, and find it is without merit.

[3] We heard oral argument on appellant's sole assignment of error on 23 January 2020, at the Widener University Commonwealth Law School.

Private First Class AG responded by punching appellant in the face, causing appellant to again bite PFC AG's wrist. Private First Class AG then grabbed appellant's hand and dug her fingernails into his palm. She also drove her elbow into appellant's sternum with the weight of her body.

As PFC AG leaned over appellant with her elbow in his sternum, appellant bit PFC AG's ear. The pain from the bite caused PFC AG to pull her ear away from appellant's mouth. As PFC AG pulled her ear away from appellant's bite, a substantial piece of her ear tore off. Private First Class AG then punched appellant in the groin, and the two separated for the remainder of the train ride back to Camp Hovey. At the time of the altercation, PFC AG weighed approximately 200 pounds, while appellant weighed approximately 150 pounds.

Before trial, appellant was interviewed as part of the Criminal Investigation Command (CID) investigation into the altercation on the train. Appellant stated that he did not fear death or grievous bodily harm as a result of PFC AG restraining him, but he did not want PFC AG to continue touching or restraining him. Appellant also stated that he never intended to bite off a piece of PFC AG's ear. Instead, his intent in biting PFC AG's ear was to prevent further unwanted touching and restraint.

At trial, the government admitted photographs of PFC AG's mangled ear with the piece missing. The photographs depict a piece of her ear, approximately two inches long and one-quarter-inch wide, starting from the bottom of the ear lobe and going up the back side of her ear, was missing. The missing piece of PFC AG's ear was never recovered. Medical providers were able to partially reconstruct the missing piece of PFC AG's ear only after two surgeries.

## LAW AND DISCUSSION

This court holds findings of guilt legally sufficient when any rational fact finder "could have found all essential elements of the offense beyond a reasonable doubt." *United States v. Nicola*, 78 M.J. 223, 226 (C.A.A.F. 2019) (citations omitted). In conducting our legal sufficiency review, we are obligated to draw "every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Robinson*, 77 M.J. 294, 298 (C.A.A.F. 2018) (citations omitted). "As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation and internal marks omitted).

With regard to factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). We may not affirm a conviction unless, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are

personally convinced beyond a reasonable doubt of appellant's guilt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

In order to sustain a conviction for maiming, the government must prove beyond a reasonable doubt: "(1) That the accused inflicted a certain injury upon a certain person; (2) That this injury seriously disfigured the person's body, destroyed or disabled an organ or member, or seriously diminished the person's physical vigor by the injury to an organ or member; and (3) That the accused inflicted this injury with an intent to cause some injury to a person." *Manual for Courts-Martial, United States* (2016 ed.) [*MCM*], pt. IV, ¶ 50.b. "The essence of the offense of maiming is the permanency of the injury inflicted." *United States v. Goins*, 18 U.S.C.M.A. 395, 398, 40 C.M.R. 107 (1969). "The disfigurement, diminishment of vigor, or destruction or disablement of any member or organ must be a serious injury of a substantially permanent nature," regardless of whether "the victim may eventually recover the use of the member or organ, or that the disfigurement may be cured by surgery." *MCM*, pt. IV, ¶ 50.c.(1).

Beyond considering the prima facie elements of the charged offense, a military judge, when sitting as the finder-of-fact, is also required to consider an affirmative defense when raised by "some evidence in the record." *United States v. Behenna*, 71 M.J. 228, 234 (C.A.A.F. 2012) (citations omitted). "In other words, a military judge must [consider] a defense when, viewing the evidence in the light most favorable to the defense, [he or she could find] in the favor of the accused in regard to that defense." *United States v. Feliciano*, 76 M.J. 237, 240 (C.A.A.F. 2017) (citation omitted). Once the evidence raises an affirmative defense, the government has "the burden of proving beyond a reasonable doubt that the defense did not exist." Rule for Courts-Martial [R.C.M.] 916(b)(1). Here, the evidence raised the issue of whether appellant's actions were justified through the exercise of self-defense.

On appeal, both parties agree that self-defense applies to appellant's case, though they differ on the appropriate standard of self-defense. Rule for Courts-Martial 916(e) provides three standards for self-defense to be used in various types of cases: (1) "homicide, assault involving deadly force, or battery involving deadly force;" (2) "assault with a dangerous weapon or means likely to produce death or grievous bodily harm;" and (3) "any assault punishable under Article 90, 91, or 128 and not listed" in one of the first two sections. The government argues that the R.C.M. 916(e)(1) standard should apply, while appellant argues that the R.C.M. 916(e)(3) standard should apply. We need not decide what standard of self-defense applies in this case because under either standard, appellant's conduct was not legally justifiable as self-defense.

Applying the R.C.M. 916(e)(1)[4] standard, appellant must have: "(A) Apprehended, on reasonable grounds, that death or grievous bodily harm was about to be inflicted wrongfully on [appellant]; and (B) Believed that the force [appellant] used was necessary for protection against death or grievous bodily harm." Here, appellant admitted in his pretrial CID interview that he did not subjectively apprehend death or grievous bodily harm during his altercation with PFC AG. Nor do we believe such a belief would have been objectively reasonable under the circumstances. Accordingly, if we apply the R.C.M. 916(e)(1) standard of self-defense, appellant's conduct is not legally justifiable.

Under the R.C.M. 916(e)(3) standard, appellant must have: "(A) Apprehended, upon reasonable grounds, that bodily harm was about to be inflicted wrongfully on [appellant]; and (B) Believed that the force that [appellant] used was necessary for protection against bodily harm, provided that the force used by [appellant] was less than force *reasonably likely* to produce death or grievous bodily harm."[5] (emphasis added). If death or grievous bodily injury results from an accused's lawful use of force, the "death or serious injury must have been an unintended and unexpected result." R.C.M. 916(e)(3) Discussion; *see also* R.C.M. 916(f) (injury must be an "unintentional and unexpected result"); *United States v. Jones*, 3 M.J. 279, 280 (C.M.A. 1977) (injury must be "unintended and not a reasonably foreseeable consequence"); *United States v. Perry*, 16 U.S.C.M.A. 221, 36 C.M.R. 377 (1966) (injury must result "unexpectedly and unintentionally").

Applying the R.C.M. 916(e)(3) standard of self-defense to this case, we find that appellant's use of force, that is biting PFC AG's ear, was reasonably likely to cause the resultant grievous bodily harm—PFC AG's torn ear. In his pretrial CID interview, appellant specifically noted he did not intend to bite off a piece of PFC AG's ear. Even accepting that as true, it was reasonably likely and not an unexpected consequence that a piece of PFC AG's ear would tear because of appellant's bite. Accordingly, appellant's conduct is not legally justifiable under the R.C.M. 916(e)(3) standard of self-defense.

After considering the evidence in the record, the elements of maiming, and the applicability of self-defense, we find appellant's conviction for maiming legally and

---

[4] We note that the "Explanation" section of the *MCM* accompanying Article 124, Maiming, provides that if "the injury is done under circumstances which would justify or excuse homicide, the offense of maiming is not committed." *MCM*, pt. IV, ¶ 50.c.(4).

[5] "'Grievous bodily harm' means serious bodily injury," including "torn members of the body, serious damage to internal organs, and other serious bodily injuries." *MCM*, pt. IV, ¶ 54.c.(4)(a)(iii).

factually sufficient. There is sufficient evidence for a reasonable finder-of-fact to find all the elements of maiming, and that self-defense did not apply to appellant's conduct. We are likewise convinced beyond a reasonable doubt that appellant's conduct satisfies the elements of maiming, and his conduct was not legally justifiable as self-defense.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Judge RODRIGUEZ and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court